No. 81,828

MARIA MONROE, *Appellant/Cross-appellee*, v. CITY OF TOPEKA, *Appellee/Cross-appellant*.

(988 P.2d 228)

Opinion filed May 28, 1999.

*Margie J. Phelps*, of Topeka, argued the cause, and *Chris R. Davis*, of Phelps-Chartered, of Topeka, was with her on the brief for appellant.

*Ann L. Hoover*, of Topeka, argued the cause, and *Linda P. Jeffrey*, city attorney, was with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an interlocutory appeal from an order of the district court denying plaintiff Maria Monroe's motion to disqualify Ann Hoover as counsel for the City of Topeka (City) on the ground that she is associated in the practice of law with Jay Hinkel, who briefly represented Monroe in early 1997. The City cross-appealed the district court's ruling that Hoover is associated with Hinkel in the practice of law as a firm under KRPC 1.9 (1998 Kan. Ct. R. Annot. 320) and KRPC 1.10 (1998 Kan. Ct. R. Annot. 322). This court transferred the case from the Court of Appeals.

The present action was brought against the City for the alleged disruption of Monroe's son's funeral. Hinkel's representation of Monroe involved her employment at Community Living Opportunities, Inc. Monroe contacted Hinkel by telephone in February 1997. She visited with him in his office once in May 1997. During the office visit, she gave him her handwritten notes and releases

for medical and employment records. Monroe terminated the attorney-client relationship with Hinkel in July 1997.

When Ann Hoover was retained by the City to represent it in this matter, she was in the process of relocating her law office into space in the law offices of the firm Clutter, Hinkel & Aadalen. Her entry of appearance, which was filed on January 22, 1998, bears the name of that firm above her signature. Later filings do not include the firm name, but Hoover uses the firm letterhead and the firm name above her signature on letters, and she is identified on the firm letterhead as "of counsel." Hoover shares the following with the firm: mailing address, office space, telephone number, facsimile number, and access to a client list of both open and closed cases. Hoover maintains her own separate law practice, shares no fees with the other members of the firm, employs her own secretary, and maintains a separate file system. She keeps her current files within the confines of her private office, and her closed files are kept at a mini-warehouse in Topeka.

Monroe sought disqualification of Hoover on the grounds that confidential information Monroe had given to Hinkel in connection with the employment matter was available to Hoover through her association with Hinkel and that the cases are related in that both involve mental and emotional distress. The district court conducted a hearing on the motion on May 8, 1998. At the hearing, the trial judge repeatedly expressed uncertainty about the proper way to conduct the proceedings and questioned whether Monroe waived her privilege for the information she gave Hinkel by challenging Hoover's qualification.

Hinkel and Hoover testified. Hoover had Hinkel's file from the employment matter marked as Defendant's Exhibit No. 1, and it was agreed that it would be held by the court reporter until the district judge decided whether it would be appropriate for him to examine it in camera.

Margie Phelps, Monroe's counsel, stated, "I had intended to—and I have available today—I had intended to proffer for in camera review potentially a packet of material that I believe is the sum total of the material that Ms. Monroe made available to Mr. Hinkel about that prior matter of representation." Phelps asserted that she

could establish that the employment matter was substantially material to the present case "merely by showing the Court this packet of material." Phelps did not offer the packet of material or make any proffer with regard to it during the May 8 hearing.

The trial judge announced that he was taking the matter under advisement, that he was not closing the record, that the parties were to brief the legal issues, and that after the legal issues had been decided they would all have a clearer notion what evidence should be considered—"I would allow either party to offer whatever additional evidence they would want once the Court rules on the issues of law here."

The parties submitted their briefs. Then, on July 7, the trial judge issued a memorandum decision and order denying the motion to disqualify. The trial judge did not examine Defendant's Exhibit No. 1 in making his decision. The trial judge had not decided the legal issues and then given the parties an opportunity to submit additional evidence, as promised.

The district court's memorandum decision and order of July 7 concluded with the following:

"Based on the fact that Mr. Hinkel's former representation of Ms. Monroe is not substantially related to the pending litigation and after balancing all the interests involved, the Court hereby denies Plaintiff's Motion to Disqualify Defendant's Counsel. . . . The matter is decided without the Court making an *in camera* inspection of Defendant's [E]xhibit #1; Plaintiff's request for an *in camera* inspection is overruled."

The court found that Hinkel previously represented Monroe regarding an employment discharge/landlord tenant dispute. Hinkel's representation of Monroe terminated as of July 28, 1997. Hinkel returned all documents pertaining to Monroe's case to her. Hinkel had not filed suit on behalf of Monroe or billed her for any time or services in representing her. Hinkel retained no copies of material which he returned to her.

The district court's memorandum decision included the following additional findings of fact relevant to this appeal:

"4. Ann Hoover is the attorney of record for the City of Topeka, the Defendant in the above-captioned case. Ms. Hoover was retained sometime shortly after January 5, 1998. On January 22, 1998, Ms. Hoover physically relocated her law

practice to the offices of Clutter, Hinkel & Aadalen, LLP. Ann Hoover's relationship with the firm is 'of counsel.' . . . She maintains her separate law practice but maintains a common malpractice insurance carrier with the firm. . . .

"5. The relationship between Ann Hoover and Clutter, Hinkel & Aadalen is a relatively new arrangement. Ms. Hoover shares the following with the firm: mailing address, office space, telephone number, facsimile number, access to a client list of both opened and closed cases, and maintains the same malpractice insurance carrier. . . . However, Ms. Hoover maintains her own separate law practice, shares no fees with the other members of the firm, employs her own secretarial staff, maintains a separate file system, and she keeps her current files separated within the confines of her private office while her closed files are kept at a mini warehouse in Topeka. . . .

"6. Ann Hoover testified at the hearing on May 8, 1998, that she has never communicated with Mr. Hinkel concerning Ms. Monroe except to confirm that he had represented her. He was uncertain but later recalled the representation. Hinkel never showed Ms. Hoover what remained of his file. . . . Ms. Hoover was hired on behalf of the City of Topeka which is separate from any association she has with the Clutter, Hinkel & Aadalen firm. She asserts that she has never had access to any client file regarding Ms. Monroe. The only access Ms. Hoover has had is to that of a client list which indicates no confidential information. . . .

. . . .

"9. The prior action in which Mr. Hinkel represented Ms. Monroe pertained to an employment discharge/landlord tenant dispute. The present litigation involves a civil rights action against the City of Topeka for [its] alleged disruption of the funeral of Plaintiff's son. Mr. Hinkel never conferred with the City of Topeka regarding the matters for which he was originally retained. . . .

"10. The Plaintiff alleges that Mr. Hinkel obtained confidential information regarding Ms. Monroe that would or could be used to adversely affect Plaintiff's present case. She claims that a possible conflict exists because both cases involve similar damages - mental and emotional distress."

Monroe filed a motion to reconsider, complaining of the lack of an opportunity to make an in camera presentation. Monroe's counsel did not submit materials with the motion, but she asked the district court for leave to make an in camera presentation. The hearing on the motion was held July 30, 1998.

On July 31, the trial judge issued another memorandum decision and order in which he stated that he had decided that he should examine Defendant's Exhibit No. 1, that he had examined the exhibit, that nothing in it convinced him to change his initial decision, and that no further in camera proceedings were necessary. In other words, in response to plaintiff's request for leave to make an in

camera presentation, the trial judge examined the defendant's submission in camera and denied plaintiff's request.

Monroe filed a supplement to plaintiff's motion for reconsideration on August 3. With the filing, Monroe submitted under seal a packet of information for in camera inspection. On August 10, she filed a second/renewed motion for reconsideration, which stated that a sealed affidavit of Monroe was submitted with the motion. The record contains Monroe's affidavit, dated August 7, in which she states that the material submitted under seal on August 3 consists of three pages, two handwritten by Monroe plus Hinkel's cover letter in returning the notes to her. According to Monroe, "This material shows the matter on which I sought Mr. Hinkel's representation. . . . [I]t is my belief that the matter on which I sought Mr. Hinkel's representation is very relevant to this case."

The district judge refused to examine the materials submitted by Monroe. In a memorandum decision and order filed on September 1, the district judge stated:

"The court finds that the burden is on the party wanting evidence to be submitted to make a proffer to the court at the hearing, not on some later date. Therefore, the court declines to review the information because the Plaintiff's counsel has had several opportunities to submit the information for *in camera* inspection prior to August 3, 1998."

The district judge granted Monroe's request for certification of the question for interlocutory appeal.

Neither Defendant's Exhibit No. 1 nor the sealed materials submitted by Monroe are part of the record on appeal.

We first consider Monroe's direct appeal of the district court's denial of her motion to disqualify defense counsel. The essence of Monroe's appeal is that due to the district court's failure to examine her notes and hear her counsel's explanation of their significance, its decision is invalid. It is her position that her notes would establish that there was a substantial relationship between the former matter and the pending litigation.

It is apparent that the proper application of KRPC 1.9 and KRPC 1.10 to the facts in the present case eluded both the trial court and counsel. That is particularly true as to the proper inter-

play between the two rules. Counsel for the City incorrectly argued that when Rules 1.9 and 1.10 are both involved, there can be no "in camera" inspection and all relevant confidential information becomes part of the public record. In that regard, defense counsel offered Hinkel's file, designated as Defendant's Exhibit No. 1, into evidence. Monroe's counsel objected unless offered for in camera inspection. The court took Monroe's objection under advisement and Defendant's Exhibit No. 1 was left with the court reporter pending a decision by the court. The district judge stated at the close of the May 8 hearing on the motion to disqualify that he was not closing the record and that he would rule on the law and then accept additional evidence from the parties. Instead, without allowing for submission of additional evidence, he denied the motion. Then, on the ground that the submission was untimely, he refused to examine materials submitted with Monroe's motion to reconsider. Although Monroe's counsel never proffered the material for an in camera inspection, she repeatedly stated that was her intention, and the trial court never ruled whether an in camera inspection was proper until after the July 30 hearing.

In its memorandum decision and order, the district court quoted KRPC 1.9 and 1.10(b) but discussed only the latter. Rule 1.9 provides:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known." (1998 Kan. Ct. R. Annot. 320.)

Rule 1.10(b) provides:

"When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter." (1998 Kan. Ct. R. Annot. 322.)

Rule 1.9 governs direct disqualification of a lawyer for conflict of interest. Neither subsection of Rule 1.9 directly fits the circumstances in this case where the motion to disqualify is aimed at Hoover on account of Hinkel's former representation of Monroe. There would seem to be no doubt that Rule 1.9(a) would prohibit Hinkel from representing the City in a matter substantially related to his previous representation of Monroe in which the City's interests are materially adverse to hers, but it does not apply directly to Hoover. Subsection (b) might prohibit Hinkel from using information relating to his representation of Monroe to her disadvantage, but it does not apply directly to Hoover.

Rule 1.10 governs imputed rather than direct disqualification. In other words, under Rule 1.10, disqualification results from an attorney's affiliation with a firm rather than from a direct personal connection with the client in question. It should be noted at the outset of our analysis that the district court determined that "Ann Hoover's association as 'of counsel' with Clutter, Hinkel, and Aadalen does constitute a firm under Rule 1.10." This determination is the subject of the City's cross-appeal.

As with Rule 1.9, subsection (b) of Rule 1.10 does not fit the circumstances in this case. The former representation of concern in 1.10(b) is Hoover's rather than Hinkel's. Subsection (b), paraphrased by inserting the names involved in this case, reads: When Hoover became associated with Clutter, Hinkel & Aadalen, the firm could not knowingly represent a person in the same or a substantially related matter in which Hoover, or her former firm, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by KRPC 1.6 (1998 Kan. Ct. R. Annot. 309) and 1.9(b) that is material to the matter. The happenstance that Hoover's move into office space with the firm of Clutter, Hinkel & Aadalen coincided closely with her entry of appearance on behalf of the City in the present case probably caused the parties and the district court to focus on Rule 1.10(b).

Rule 1.10(a), which was not quoted by the district court, provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone

would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, or 2.2." (1998 Kan. Ct. R. Annot. 322.) This rule would prohibit Hoover from representing the City in this case if Hinkel would be prohibited from doing so. Rule 1.9(a) would prohibit Hinkel from representing the City in a matter substantially related to the matter in which he previously represented Monroe because in the present case the City's interests are materially adverse to Monroe's. Thus, if the present case is substantially related to the matter in which Hinkel previously represented Monroe, then Hoover, because associated in a firm with Hinkel, cannot represent the City in the present matter.

Unlike Rule 1.10(b), subsection (a) of Rule 1.10 imputes disqualification to lawyers practicing together without regard to whether client confidences actually have been shared. Thus, subsection (a) applies a rule of disqualification upon a determination that the current and previous matters are substantially related.

Monroe contends that her handwritten notes would establish that the present case is substantially related to the matter on which Hinkel previously represented her. Because Hinkel returned the notes to Monroe without retaining a photocopy, they were not contained in Defendant's Exhibit No. 1.

In *Chrispens v. Coastal Refining & Mktg., Inc.*, 257 Kan. 745, 897 P.2d 104 (1995), this court conducted a thorough review of the subject, concluding that there is no single standard test for substantial relationship so that determinations are to be made on a case-by-case basis. Among the many approaches noted by the court was *Koch v. Koch Industries*, 798 F. Supp. 1525, 1536 (D. Kan. 1992), where the federal district court "defined the term 'substantially related' to mean that the cases 'involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct.' " 257 Kan. at 753. In addition, the court quoted the following from *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980): " '[T]he underlying concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought.' " 257 Kan. at 753.

Monroe does not contend that the subject matter of her former and current cases correlate. Instead, she contends that it is the nature of the damages sought that makes the present case substantially related to her previous representation by Hinkel. Thus, it appears that the interconnection, if any, lies in something akin to what the federal district court termed a client's pattern of conduct. And Monroe insists that Hinkel acquired information during his previous representation that relates to the nature of the cause of action, intentional infliction of emotional distress, and damages sought in the present case. It is not enough, therefore, merely to compare the topics of the two causes of action for parallels.

In *Barragree v. Tri-County Electric Co-op, Inc.* 263 Kan. 446, 950 P.2d 1351 (1997), the district court disqualified a Liberal, Kansas, law firm from representing the defendant Co-op, finding that a member of the firm had violated MRPC 1.7(a) (1997 Kan. Ct. R. Annot. 297) and MRPC 1.9(b) (1997 Kan. Ct. R. Annot. 304). We reversed, finding no violation and, in so doing, we noted the inapplicability of MRPC 1.10(a) in that case:

"Tri-County does not discuss MRPC 1.10(a), the imputed disqualification rule, apparently conceding that if a violation of MRPC 1.7(a) or 1.9(b) is found, the MRPC 1.10(a) violation follows. We agree. MRPC 1.10(a) provides: 'While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9, or 2.2.' (1997 Kan. Ct. R. Annot. 305.) Under MRPC 1.10(a), the fact that Kerry McQueen had no client contact with the Smiths will not prevent a conflict of interest disqualification if other lawyers in the firm had sufficient client contact to cause a disqualification. Because MRPC 1.10(a) is not at issue, we move on without further discussion of the imputed disqualification rule." 263 Kan. at 454.

Imputed disqualification under Rule 1.10 is an evaluative determination based on the unique facts of each case. In this case, the district court did not examine or take into consideration the one item of documentary evidence that Monroe contends would establish the substantial relationship between the present case and the previous litigation. Although the district court did eventually make an in camera inspection of Defendant's Exhibit No. 1, by all accounts the material which Monroe gave to Hinkel had been returned to her. The district court, therefore, was not in a position

to make a determination absent an in camera inspection of the documents submitted under seal by Monroe.

We next consider the City's cross-appeal. The City contends that the district court incorrectly concluded that defense counsel is associated with Monroe's former attorney in the practice of law as a firm under KRPC 1.9 and 1.10. The Comment to Rule 1.10 provides, in part:

"Whether two or more lawyers constitute a firm within this definition can depend on the specific facts. For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules. The terms of any formal agreement between associated lawyers, are relevant in determining whether they are a firm, as is the fact that they have mutual access to confidential information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to another." (1998 Kan. Ct. R. Annot. 322.)

The district court relied on the Comment to 1.10 in reaching the following conclusion:

"[I]t appears that Ann Hoover's association as 'of counsel' with Clutter Hinkel, and Aadalen does constitute a firm under Rule 1.10. Although there appears to be no internal sharing of fees or other management facets of the law practice, Ann Hoover and the firm do share office space, a telephone and facsimile number, and a mailing address. Based on these facts, it would suggest to the public that Ann Hoover was a part of the Clutter, Hinkel, & Aadalen firm, thus placing them within the purview of [R]ule 1.10."

In its cross-appeal, the City takes issue with the district court's finding that Hoover and the firm of Clutter, Hinkel & Aadalen jointly insure against malpractice claims. In fact, the district court was wrong in finding that they have common malpractice insurance. At the May 8 hearing, Hoover testified that when she first moved into the space with Clutter, Hinkel & Aadalen, they contemplated an of-counsel arrangement with a common malpractice carrier. Within a short time, though, their respective insurers ad-

vised them that the coverage should be separate because their files were separate. However, the district court's erroneous impression about shared insurance was not mentioned as a factor in reaching the conclusion that Hoover should be considered part of the firm.

The weighty factors in the district court's conclusion were indicia of Hoover's and Clutter, Hinkel & Aadalen's presenting themselves to the public in ways strongly suggesting that they conduct themselves as a firm. In addition to shared office space, telephone and facsimile numbers, and mailing address mentioned by the district court, the record shows that Hoover used the firm name with her signature on her entry of appearance, that the Clutter, Hinkel & Aadalen letterhead lists Hoover as "Of Counsel," that Hoover used the Clutter, Hinkel & Aadalen letterhead for a letter to the district judge about this case, and that Hoover used the firm name with her signature on the letter. Hoover also used the firm letterhead and the firm name with her signature on a letter to Chris R. Davis regarding discovery matters. Under these circumstances, the trial court correctly found they presented themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm and, therefore, should be regarded as a firm for the purpose of applying the Kansas Rules of Professional Conduct in the present case.

We affirm the district court's ruling that Hoover was associated with Hinkel in the practice of law as a firm. We reverse the order denying Monroe's motion to disqualify Hoover as counsel for the City and remand the case with directions to the district court to examine in camera the materials submitted by Monroe for the purpose of determining whether a substantial relationship exists between the present case and the matter in which Hinkel represented her. If so, Rule 1.9(a) disqualifies Hinkel, and Rule 1.10(a) would prohibit Hoover from representing the City in this matter.

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded with directions.