(31 P.3d 296)
No. 86,435

QUALITY DEVELOPERS, INC., as a Shareholder of and on Behalf of RED COACH INNS, LTD., *Appellant/Cross-appellee*, v. ELDON THORMAN, *Appellee/Cross-appellee*, and the ESTATE of EDWIN T. PYLE; E. TOM PYLE, JR.; JOHN T. PYLE, II; and RONALD S. OBERG, Co-Executors, *Appellees/Cross-appellants*.

Opinion filed August 31, 2001.

*Mark G. Ayesh*, of Ayesh Law Offices, of Wichita, for appellant/cross-appellee.

*Robert J. O'Connor, John A. Vetter*, and *Van M. Halley*, of Morrison & Hecker L.L.P., of Wichita, for appellee/cross-appellee Thorman.

*E. Thomas Pyle, III*, of Pyle Law Office, of McPherson, for appellees/cross-appellants.

Before GREEN, P.J., LEWIS, J., and JACK L. BURR, District Judge, assigned.

GREEN, J.: Quality Developers, Inc. (Quality) appeals from the dismissal for lack of standing of its shareholder derivative action against Eldon Thorman and the Estate of Edwin T. Pyle (the Pyle Estate). Quality also appeals from the trial court's order denying its motion to disqualify the law firm of Morrison & Hecker from the dual representation of two allegedly adverse parties. The Pyle Estate cross-appeals an order setting aside Quality's voluntary dismissal of the estate based on the settlement the Pyle Estate entered into with Quality. We affirm in part, reverse in part, and remand for further proceedings.

Quality is a registered stockholder of Red Coach Inns, Ltd. (Red Coach), a corporation organized in 1973 by Thorman and Edwin T. Pyle (Pyle). Since formation of the corporation, Quality has owned one-half of the outstanding shares of Red Coach stock. Quality's stock, in turn, is owned by Pyle's four children. The remaining one-half of Red Coach stock is owned by Eileen Wright, Thorman's daughter.

When the stock was issued, both Quality and Wright issued irrevocable proxies to Thorman and Pyle to vote their stock. Each year, Thorman was elected president and Pyle was elected vice-president, secretary, and treasurer of Red Coach. Almost every year, consent minutes were signed by the shareholders generally ratifying the actions of the officers.

After Pyle died in 1997, his children discovered records which they allege establish that Thorman and Pyle (1) misappropriated corporate assets without consideration; (2) seized corporate expansion opportunities for personal use; and (3) stripped Red Coach of its profits by charging rent for property they misappropriated from the corporation.

Two of the four shareholders of Quality sued Thorman and their father's estate through a double derivative action, that is, a derivative action against Quality for not protecting corporate assets by pursuing Quality's claims against Thorman and the Pyle Estate. Through the law firm of Morrison & Hecker, Thorman challenged the use of a double derivative action. The trial court dismissed the suit on procedural grounds.

After the double derivative action was dismissed, all of Quality's shareholders agreed to pursue a single derivative action against Thorman and their father's estate. The present case was filed by Quality as a shareholder of Red Coach, asserting misappropriation and breach of fiduciary duty claims. Quality alleged the total misappropriation was in excess of $7,500,000. In addition, Quality requested the appointment of a custodian for Red Coach.

Wright, as a shareholder of Red Coach, sought appointment of a custodian over the corporation. Wright was represented by Morrison & Hecker in that case. Wright's custodianship case was joined with the derivative action. The trial court granted the requests for an appointment of a custodian for Red Coach.

Quality and the Pyle Estate moved to disqualify the law firm of Morrison & Hecker from the dual representation of Thorman and Wright due to Thorman's and Wright's alleged irreconcilable conflict of interest and because attorneys from the firm were supposedly necessary witnesses for Quality on the issue of beneficial ownership of stock. After an evidentiary hearing, the trial court denied the motions to disqualify.

During the current case, Thorman took the position that Quality and Wright are only nominal owners of the stock in Red Coach and that he (Thorman) and Pyle were the beneficial owners of the corporation. Thus, according to Thorman, Quality lacks standing to pursue any misappropriation or breach of fiduciary duty claims. The trial court agreed with Thorman and dismissed Quality's claims for lack of standing.

*Standing*

The first issue on appeal is whether Quality has standing to bring this derivative action. Our standard of review is whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999). An appellate court's review of conclusions

of law is unlimited. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

When a shareholder believes that an officer or director has breached his or her fiduciary duty to the corporation or to its stockholders, the shareholder may file a derivative action under K.S.A. 60-223a or, in certain circumstances, the shareholder may bring an individual damage suit. *Richards v. Bryan*, 19 Kan. App. 2d 950, 961, 879 P.2d 638 (1994).

Quality filed this derivative action under K.S.A. 60-223a, which provides in pertinent part:

> "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the state of Kansas which it would not otherwise have."

K.S.A. 60-223a parallels Rule 23.1 of the Federal Rules of Civil Procedure, and authorities interpreting the federal rule are persuasive. See *Newton v. Hornblower, Inc.*, 224 Kan. 506, 511, 582 P.2d 1136 (1978).

The trial court determined that Quality lacked standing to bring a derivative suit after finding that it was merely a nominal owner of Red Coach stock. The standing requirement in a derivative action was reiterated in *Schupack v. Covelli*, 498 F. Supp. 704, 705 (W.D. Pa. 1980):

> "The requirement that one have a present possessory interest in the stock of a corporation in order to sue derivatively on its behalf is a basic fundamental of corporation law. [Citations omitted.] The rationale behind this standing requirement is quite simply the belief that only a party with an on-going proprietary interest in the corporation will adequately represent the corporation's interests in a derivative action. [Citations omitted.] Moreover, this standing requirement is also implicit in the Federal Rules of Civil Procedure, which state that derivative actions may be 'brought by one or more shareholders . . . .' [Citation omitted.]"

On appeal, Thorman does not dispute that Red Coach stock is in the names of Quality and Wright, but instead argues that the

stock was held for the benefit of Thorman and Pyle. The trial court resolved this issue by succinctly finding as follows:

"1. [Quality] is merely a nominal owner of [Red Coach] stock.

"2. Without beneficial ownership of [Red Coach] during the period of alleged wrong-doing, [Quality] lacks standing to bring the instant lawsuit and the Court lacks jurisdiction over the case."

Notably, the trial court failed to cite any statutory or case law to support its holding.

We find that the trial court erred in dismissing Quality for lack of standing. K.S.A. 60-223a confers standing to bring a derivative action to an individual or corporation that was a shareholder at the time of the alleged wrongdoing. The statute does not place an added requirement that the shareholder be a beneficial owner of stock in the corporation. Such an interpretation would be contrary to our rules of statutory construction.

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

We refuse to read the term "shareholder" as used in K.S.A. 60-223a to mean a beneficial owner of a corporation. " 'The rule of strict construction means that ordinary words are to be given their ordinary meaning. Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it.' " *In re Tax Appeal of Alex R. Masson, Inc.*, 21 Kan. App. 2d 863, 868, 909 P.2d 673 (1995). The ordinary meaning of the term "shareholder" is the stockholder of record. 18A Am. Jur. 2d Corporations § 728 ("A stockholder or shareholder is the owner of one or more shares of stock in a corporation . . . ."); 19 Am. Jur. 2d Corporations § 2341

("As a general rule, a person who holds legal title to shares in a corporation at the time of the transaction complained of, and at the time of the action, can bring a shareholders' derivative action, even if the shares are held for the benefit of others."). Because Quality and Wright were the stockholders of record at the time of the alleged wrongdoing, Quality had standing to bring this derivative action.

Furthermore, Quality's standing to bring this suit was not affected by Thorman's and Pyle's possible status as beneficial owners of Red Coach. Even if Thorman and Pyle had beneficial ownership of the corporation, Quality nevertheless had standing to bring this derivative action because K.S.A. 60-223a confers standing to stockholders of a corporation, whether or not that ownership interest was merely nominal. Even if Quality was a mere nominal owner in Red Coach, as the trial court previously determined, it had standing to bring this action because it had an ongoing proprietary interest in the corporation.

A proprietary interest has been defined as "the interest of an owner of property together with all rights appurtenant thereto . . . ." Black's Law Dictionary 1219 (6th ed. 1990). In *Millar v. Mountcastle*, 161 Ohio St. 409, 119 N.E.2d 626 (1954), the Ohio Supreme Court considered the meaning of ownership as represented by holding shares of stock. The court pointed out that by reason of ownership of a share of corporate stock, a shareholder becomes "the owner of intangible property may be said to be comprised of various relationships which are determined by the terms of the stock certificate, the articles and regulations of the corporation and the statutes and common law of the state of incorporation." 161 Ohio St. at 418. The *Millar* court further noted that the ownership comprising the relationship might include "one or more" of the following:

"(1) The right to vote.

"(2) The right to participate in dividends.

"(3) The right to participate in any distribution of net assets upon a reduction of capital or upon dissolution or liquidation.

"(4) The right to inspect corporate books.

"(5) The right to subscribe for any additional share offered by the corporation.

"(6) The right to bring a shareholder's derivative suit.

"(7) The duty to pay the corporation the amount of consideration for which shares were authorized to be issued." 161 Ohio St. at 418-19.

Clearly, Quality had a proprietary interest in the corporation because it had the right to vote shares of stock. Although Quality gave an irrevocable proxy to Thorman and Pyle to vote its shares of stock in May 1974, the corporation's bylaws stated that "in no case shall [the proxy] exceed seven (7) years from the date of its execution." The record indicates that this proxy would have expired in May 1981. In addition, Quality had the right to inspect the corporate records. We determine that a "proprietary interest" conferred by ownership of stock may consist of one or more of the previously mentioned items listed by the *Millar* court. As a result, we find that the trial court erred in dismissing Quality for lack of standing.

In summary, our decision goes no further than to hold that a record owner of stock in a corporation has standing under K.S.A. 60-223a to bring a shareholder derivative action on behalf of the corporation. In reversing and remanding for further proceedings, we do not reach the merits of the case.

*Disqualification of Morrison & Hecker*

Quality and the Pyle Estate additionally contend that the law firm of Morrison & Hecker should be disqualified from the dual representation of Thorman and Wright due to Thorman's and Wright's irreconcilable conflict of interest and because attorneys from the firm are necessary witnesses for Quality. The alleged irreconcilable conflict arises from Morrison & Hecker's representation of both Wright and Thorman in this litigation wherein Wright and Thorman allegedly take directly opposite factual positions as to the ownership of Red Coach stock.

In the double derivative action, Thorman, through Morrison & Hecker, took the position that Quality and Wright were the owners of Red Coach stock. However, Thorman later alleged that he did not take the position that Quality owned half of the Red Coach stock, but rather that he accepted the allegations of the petition that Quality and Wright were shareholders for the limited purpose

of explaining to the trial court that the plaintiff's allegations failed to state a claim for relief. We agree that Thorman's statements in the double derivative action regarding Quality's and Wright's shareholder status were for the limited purpose of alleging the failure to state a claim for relief. As a result, we will not consider those statements in determining whether Thorman's and Wright's positions are directly adverse.

In the single derivative action, Thorman, again through his attorneys at Morrison & Hecker, gave the following answer to an interrogatory asking Thorman to identify all shareholders in Red Coach from the commencement of corporate operations to the present:

"Eldon Thorman and Edwin T. Pyle were the owners of [Red Coach] until Edwin T. Pyle's death. Eldon Thorman remains an owner of [Red Coach]. . . . Edwin T. Pyle and Eldon Thorman were the only individuals that were involved in the formation, capitalization and operation of [Red Coach]. Their mutual agreement was that each would have a 50% interest in the corporation. Their mutual intent was that their interests would pass to [Quality] (Pyle's interest) and Eileen Wright (Thorman's interest) upon their respective deaths, but that during their lives Eldon Thorman and Edwin T. Pyle would exercise complete ownership and control of [Red Coach]. To this end, Eileen Wright acts as a nominee holder of Eldon Thorman's shares. Although stock certificates were made out to both [Quality] and Eileen Wright on December 13, 1973, neither [Quality] nor Eileen Thorman [*sic*] ever paid any consideration for their respective shares. These certificates were never delivered to either [Quality] or Eileen Thorman [*sic*]. Defendant Thorman does not know who or what entity currently owns Edwin T. Pyle's interest in [Red Coach]."

Moreover, throughout his answers to the interrogatories, Thorman repeatedly referred to himself and Pyle as the "sole owners" of Red Coach.

Later, in response to Quality's request for admissions wherein Thorman was asked to admit that "Exhibit 19 . . . are true and accurate copies of the unanimous consent minutes of the stockholders of Red Coach Inns, Ltd. from November 14, 1973 through June 30, 1995," Thorman gave the following denial:

"Denied. Exhibit 19 contains 'Statements of Unanimous Consent to Action Taken by Stockholders in Lieu of Annual Stockholders Meeting' for the years listed above with the exception of 1990 and 1994. *Defendant Thorman specifically denies that*

*Quality Developers or Eileen Wright were stockholders of [Red Coach] at the time any of these documents were drafted or executed."* (Emphasis added.)

We interpret the italicized portion of Thorman's denial as conveying his regard that ownership of Red Coach is a genuine issue for trial. Because Thorman did not admit that Quality or Wright are beneficial owners of Red Coach, he was free to develop the ownership issue and theorize that legal and equitable title is split between Thorman and Wright. See 3 Kooman, Federal Civil Practice § 36.01 (1970) ("The very purpose of a request is to ascertain whether the answering party is prepared to admit the fact alleged in the request or regards it as presenting a genuine issue for trial."). As a result, we will not consider Thorman's denial regarding Wright's status as a stockholder in determining whether Thorman's and Wright's positions are directly adverse.

Quality and the Pyle Estate argue that Thorman's statements that he owns Red Coach contradicts Wright's position that she is a shareholder in the corporation. In Wright's motion to consolidate her custodianship proceeding with the single derivative action, she stated that she was a stockholder of Red Coach. Wright made a similar statement in an affidavit wherein she attested to the fact that she was the owner of 400 shares of Red Coach stock. Wright's motion to consolidate and affidavit were prepared by Morrison & Hecker.

Based on these alleged inconsistent positions advanced by Morrison & Hecker on behalf of Thorman and Wright, Quality and the Pyle Estate moved to disqualify Morrison & Hecker, arguing that the law firm violated Rules 1.7 (2000 Kan. Ct. R. Annot. 339), 3.1 (2000 Kan. Ct. R. Annot 380), 3.2 (2000 Kan. Ct. R. Annot. 382), 3.3 (2000 Kan. Ct. R. Annot. 385), and 3.4 (2000 Kan. Ct. R. Annot. 389) of the Kansas Rules of Professional Conduct (KRPC).

Morrison & Hecker attempted to explain the apparently conflicting positions by arguing to the trial court that the statements made by Thorman and Wright are consistent with the theory that Thorman is the beneficial owner of the Red Coach stock and that Wright is the nominal owner of the stock.

The trial court denied the motions to disqualify Morrison & Hecker after finding that the law firm had not taken a position on

behalf of Thorman or Wright that was directly adverse to the other and that no conflict existed between those parties. The trial court further found that the affidavits and pleadings filed by Morrison & Hecker on behalf of its clients comport with the theory that legal and equitable title to Red Coach was divided between Thorman and Wright.

On appeal, Quality and the Pyle Estate argue that the trial court erred in refusing to disqualify Morrison & Hecker. In an attorney disqualification case, the appellate court is to decide whether the trial court's findings of fact are (1) supported by substantial competent evidence, and (2) sufficient to support the conclusions of law. This court's standard of review of conclusions of law is unlimited. *Chrispens v. Coastal Refining & Mktg., Inc.*, 257 Kan. 745, 760-63, 897 P.2d 104 (1995).

"A court deciding a motion to disqualify counsel must balance several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties and the entire judicial process. [Citation omitted.]" *Lansing-Delaware Water District v. Oak Lane Park, Inc.*, 248 Kan. 563, 571, 808 P.2d 1369 (1991). Moreover, this court observed the following in *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 750, 876 P.2d 184 (1994):

" 'Motions to disqualify "should be reviewed with extreme caution for they can be misused as a technique[] of harassment." ' [Citation omitted.] 'Such motions are often simply " 'common tools of the litigation process, . . . used . . . for purely strategic purposes.' " ' [Citation omitted.] 'The right to be represented by counsel of choice is an important one, subject to override only upon a showing of compelling circumstances.' [Citation omitted.] . . . '[T]he purpose of the [Model Rules of Professional Conduct] can be subverted when they are involved by opposing parties as procedural weapons.' [Citation omitted.]"

Motions to disqualify are often disguised attempts to divest opposing parties of their counsel of choice. *Chrispens*, 257 Kan. at 772.

In a motion to disqualify under KRPC 1.7, the general rule is that the burden of proof is on the party who seeks disqualification. See ABA/BNA Lawyers' Manual on Professional Conduct, § 51:228

(1992). KRPC 1.7 concerns conflicts of interest involving adverse concurrent representation and provides as follows:

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved." 2000 Kan. Ct. R. Annot. 339.

The Comment to KRPC 1.7 (2000 Kan. Ct. R. Annot. 340) indicates that, in regard to representation of more than one party in litigation, "[a]n impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question."

On appeal, it is alleged that Morrison & Hecker must be disqualified because the positions advanced by the firm on behalf of Thorman and Wright are incompatible. Thorman responds to the allegation by contending that Quality and the Pyle Estate merely rely on the fact that he and Wright have not always specified the type of ownership interest in Red Coach that they claim.

We agree with the trial court that Morrison & Hecker has not taken a position on behalf of Thorman or Wright that is directly adverse to the other. The positions advanced by the firm are consistent with the theory that beneficial and nominal ownership is split between Thorman and Wright. For example, in his answer to interrogatories, Thorman claimed that he and Pyle were the sole owners of Red Coach. However, Thorman admitted that 50% of Red Coach stock is in Wright's name, but that Wright is a nominal holder of the stock. Moreover, Wright's claim that she owns 50%

of Red Coach stock is consistent with Thorman's position. Although Wright claimed ownership of Red Coach stock, she did not allege that she is a beneficial owner of the stock. As a result, we find that the trial court did not err in finding that Thorman's and Wright's positions are not directly adverse.

It is further alleged that Morrison & Hecker should be disqualified from the dual representation because there is a substantial discrepancy in Thorman's and Wright's testimony given at the hearing on the motions to disqualify. First, it is alleged that there is a substantial discrepancy in Thorman's and Wright's testimony regarding Wright's affidavit and her application for custodianship. Specifically, the Pyle Estate argues that Thorman's and Wright's testimony conflicted as to who prepared Wright's affidavit and whether Thorman saw Wright's affidavit before the hearing on the motions to disqualify. In addition, it is alleged that Thorman's and Wright's testimony conflicted regarding who prepared Wright's custodianship application, whether the application was prepared at Thorman's direction, and who requested the relief sought in the application.

It is important to note that Thorman's and Wright's testimony regarding the affidavit and application for custodianship was given during the hearing to determine whether Morrison & Hecker should be disqualified for advancing inconsistent positions on the issue of ownership of Red Coach on behalf of Thorman and Wright. Accordingly, the alleged discrepancies are not material to the issue of whether Thorman's and Wright's positions are directly adverse. To constitute a substantial discrepancy, the differences in the testimony must be material to the issues to be resolved. See Black's Law Dictionary 1428 (6th ed. 1990) (defining "substantial" as "[s]ynonymous with material"). Because the testimony regarding the affidavit and application for custodianship is collateral to whether Thorman's and Wright's positions on the issue of ownership of Red Coach are adverse, it cannot be said that any discrepancies regarding those topics are substantial.

The other alleged discrepancy in Thorman's and Wright's testimony involves ownership of Red Coach stock. During the hearing on the motions to disqualify Morrison & Hecker, Wright testified

that she was the owner of 400 shares of Red Coach stock. However, Thorman testified that he disagreed with Wright's testimony that she was a shareholder.

We do not find a substantial discrepancy in Thorman's and Wright's testimony regarding stock ownership so as to require disqualification of Morrison & Hecker. Although Thorman disagreed with Wright's testimony that she was a stockholder of Red Coach, Thorman's disagreement was expressed in the context that Wright's interest was merely nominal and that he and Pyle were the beneficial owners of Red Coach. As a result, we find that Thorman's and Wright's testimony regarding ownership of Red Coach is not substantially different because the testimony is consistent with the theory that legal and equitable title is split between Thorman and Wright.

Finally, it is argued that Morrison & Hecker should be disqualified from representing Thorman and Wright because attorneys from the law firm are necessary witnesses for Quality. Quality alleges that the creation of the conflict via the nominal stock ownership theory rendered attorneys from Morrison & Hecker necessary witnesses to a critical factual issue. Quality further contends that the testimony of Morrison & Hecker attorneys will be adverse to Thorman or Wright or both.

Whether a disciplinary rule prohibits certain professional conduct is a question of law subject to plenary review on appeal. *LeaseAmerica Corp.* 19 Kan. App. 2d at 743-44. The *LeaseAmerica Corp.* court noted factors to be considered in determining whether a motion for disqualification should be granted:

" '[W]hen an attorney is sought to be disqualified from representing his client because an opposing party desires to call the attorney as a witness, the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and, third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client.' " 19 Kan. App. 2d at 751 (quoting *Smithson v. U.S. Fidelity & Guar. Co.*, 186 W. Va. 195, 201, 411 S.E.2d 850 [1991]).

We find that Quality has failed to establish that attorneys from Morrison & Hecker would be necessary witnesses for Quality. Spe-

cifically, Quality does not point to any testimony which Morrison & Hecker attorneys would give that would be adverse to their clients' interests. Moreover, Quality has failed to show that testimony by attorneys from Morrison & Hecker would be material to the issues to be resolved, that the evidence could not be obtained elsewhere, or that the attorneys' testimony would be potentially prejudicial to Thorman or Wright. Mere speculation is not a sufficient basis for an order to disqualify an attorney. *LeaseAmerica Corp.*, 19 Kan. App. 2d at 753. As a result, the trial court did not err in refusing to disqualify Morrison & Hecker attorneys from the dual representation of Thorman and Wright.

### *Setting Aside Voluntary Dismissal of the Pyle Estate*

In its cross-appeal, the Pyle Estate argues that the trial court erred as a matter of law in setting aside Quality's voluntary dismissal of the estate based on the settlement the Pyle Estate entered into with Quality. To support its position, the Pyle Estate relies on K.S.A. 2000 Supp. 60-241(a)(1)(i). In pertinent part, the statute provides: "Subject to the provisions of subsection (e) of K.S.A. 60-223 and of any statute of the state, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs . . . ."

The Pyle Estate insists that K.S.A. 2000 Supp. 60-241(a)(1)(i) allows Quality to voluntarily dismiss the Pyle Estate without court approval because the dismissal occurred before the Pyle Estate or Thorman filed an answer or motion for summary judgment. Because this issue requires an interpretation of K.S.A. 2000 Supp. 60-241(a)(1)(i), our standard of review is unlimited. See *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

K.S.A. 2000 Supp. 60-241(a)(1)(i) mirrors Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure. Accordingly, authorities interpreting the federal rule are persuasive. See *Newton v. Hornblower, Inc.*, 224 Kan. 506, 511, 582 P.2d 1136 (1978).

"There are three situations where a voluntary dismissal is not possible under Rule 41(a)(1)(i)." One of the three situations re-

quiring approval of the court before dismissal is a shareholder derivative action because "Rule 23.1 prohibits dismissal of derivative actions by shareholders without approval of the court." 4 Kooman, Federal Civil Practice § 41.01 (1970). Fed. Civ. Proc. R. 23.1 is the federal counterpart to K.S.A. 60-223a, which states in pertinent part that a shareholder derivative action "may be dismissed or compromised only with the approval of the court upon notice to shareholders or members in such manner as the court may direct."

The court in *Winkelman v. General Motors Corporation*, 48 F. Supp. 490, 493 (S.D.N.Y. 1942), noted the following regarding the requirement that the trial court approve a settlement in a derivative action:

"The role of the court is to see that the compromise is fair and reasonable under the circumstances and that no collusion or fraud has been practiced in the consummation of the settlement. To do this the court must weigh the probabilities and the possibilities of victory or defeat as indicated by the legal or factual situation presented. If such considerations lead to the conclusion that the settlement agreed upon by the plaintiffs in the suit is not unfair or unreasonable to the corporation (in which all the other stockholders have their interest), then the action of the plaintiffs in compromising the suit should be approved."

Because K.S.A. 60-223a permits dismissal in a shareholder derivative action only with the approval of the trial court, we find that the trial court did not err as a matter of law in setting aside the voluntary dismissal of the estate by Quality based on the settlement entered into between Quality and the Pyle Estate.

Affirmed in part, reversed in part, and remanded.