NOT DESIGNATED FOR PUBLICATION

No. 126,599

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
M.D.,
*Appellant*,
and
S.D.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JACQUELYN E. ROKUSEK, judge. Submitted without oral argument. Opinion filed October 18, 2024. Affirmed.

*Jeffrey Leiker*, of Leiker Law Office, P.A., of Overland Park, for appellant.

No appearance by appellee.

Before WARNER P.J., HILL and COBLE, JJ.

PER CURIAM: This case arises out of a contentious divorce and custody dispute between M.D. (Father) and S.D. (Mother). On appeal, Father offers three arguments. First, Father suggests that the district court's order disqualifying his father (Grandfather) as his lawyer was erroneous. Second, he maintains that the district court abused its discretion by modifying the parties' permanent parenting plan. And third, in his view, the modification order deprived Father of due process. We have no brief from Mother.

A motion to disqualify an attorney from representing a client in court is a motion not to be granted lightly. There are too many important interests that are competing that must be assessed, balanced, and adjudged. Those interests include the rules of

1

professional conduct, the right to call witnesses, the right to contract, and justice. The rules of professional conduct are clear that an attorney who is a witness in a legal proceeding must not continue to represent that client in that proceeding. In addition, competing litigants have the right to call witnesses that they think are important for the judge to hear. Additionally, parties have a right to contract with the attorney they choose. It is also true that it is simple justice that a litigant is not forced to appear in court without their chosen legal champion.

In this prolonged divorce case—said by some to be the most contentious case in Johnson County family court—the decision to disqualify was made twice. The first was denied. The second was granted. It appears that the district court's order disqualifying Grandfather as Father's lawyer was supported by substantial competent evidence because Grandfather had already testified once in the case and therefore, was a necessary witness under Rule 3.7 of the Kansas Rules of Professional Conduct (2024 Kan. S. Ct. R. at 395).

We also resolve the remaining two issues. The order modifying the permanent parenting plan was not an abuse of discretion because Mother showed a material change in circumstances justifying the modification. And finally, because neither party requested oral argument or a hearing on the motion, the district court's issuance of the order did not deprive Father of due process. Both Father and Mother had the opportunity to ask for a hearing but failed to do so.

Accordingly, we affirm.

*The parties engage in post-divorce battles over parenting time.*

After eleven years of marriage and four children together, Father and Mother divorced. Six years of contentious and acrimonious litigation over the parties' children, spousal maintenance, and child support followed. At first, the parties agreed to share

2

equal parenting time with their four children. The trial court issued a journal entry and decree of divorce and adopted the initial parenting plan as the permanent plan. It also found that—based on evidence at a bench trial—the parenting plan was in the best interests of the children. The trial court also ordered Father to pay child support and spousal maintenance.

A few months later, Mother moved to reduce Father's parenting time and require that it be supervised due to the many coparenting issues she had with Father. Many motions followed which concerned issues of the children's therapists, school arrangements, and Father's child support payments. At a hearing, the district court ordered that both parents must submit to a psychological evaluation. Mother complied, but Father refused. While Father refused to submit to the evaluation, he obtained verbatim portions of the results of Mother's evaluation from his lawyer, which is a violation of a local court rule.

The district court sanctioned Father and his counsel based on Father's refusal to comply with the district court's order to submit to an evaluation and his lawyer's release of portions of Mother's evaluation to Father. As a result, the district court also suspended Father's parenting time to which Father moved for the court to reconsider. The district court then partially granted the reconsideration motion and modified Father's parenting time to two hours of supervised parenting time twice a week. The district court did note its observation that Father had not consistently exercised his share of parenting time and that most of Father's parenting time was spent with paternal grandparents.

*The case is transferred to another judge after Grandfather's ethics complaints to the Kansas Commission on Judicial Conduct.*

A few months later, Judge Schoenig recused herself after Grandfather filed complaints with the Kansas Commission on Judicial Conduct. The case was reassigned to

3

Judge Hauber. Shortly thereafter, Father's lawyer moved to withdraw, "citing an ethics rule that a lawyer may withdraw 'if a client insists on pursuing an objective that the lawyer considers imprudent.'" Though, an "amended motion also cited strategy differences."

Grandfather entered his appearance before the district court granted the motion to withdraw by Father's current lawyer. At a hearing on the issue, the district court expressed concern with Grandfather's involvement in the case. The district court stated that, as a lawyer, the court knew "how difficult it is when you're involved with a family member" and asked Grandfather whether he could handle that both professionally and ethically. Grandfather assured the court that he could handle it and that his representation of Father was proper, citing that attached to Grandfather's entry of appearance was an affidavit by Father consenting to the representation "regarding the ethical rules and what it means to potentially be a witness."

Additionally, Grandfather told the court,

"And, Judge, I will tell you, it's impossible to not have emotion. But I'm going to tell you that you're there to make certain—and I'm confident you will—that I don't overstep any bounds or do anything that's inappropriate, and I don't think that I will.

"Judge, I teach—I teach ethics and professional responsibility to Missouri's judges at the request of the Supreme Court. I teach it to every single judge—as a lawyer—I've been off the bench ten years—who becomes a new judge each year. I teach a new judge orientation, professional responsibility and ethics, to those judges. And I teach it to lawyers every single year in CLEs. I know what the rules are. I don't know all the Kansas rules, but, Judge—"

The district court responded that Missouri's and Kansas' Rules of Professional Conduct were "pretty much the same" and continued the inquiry into whether

4

Grandfather's representation was appropriate. The court noted that the case "hits a little closer to home" for Grandfather and stated that Grandfather

> "can teach, but when it hits your heart, sometimes it's just awful hard to be able to do what professionally needs to be done. And . . . as a grandparent, if you wanted to, you could probably intervene, and I'd have you in the case one way or the other. And you haven't done that."

During the same hearing, the court instructed the guardian ad litem to contact all the "relevant folks in this case," expressly including Grandfather and stated,

> "because even if he isn't participating in this case as an attorney because of what you say, [Mother's lawyer], he, theoretically, could participate as a grandparent.
> "So you haven't asked for that consideration yet, [Grandfather]. If you did, you'd be a party. So . . . since you're in the mix, I'm treating this as notify all concerned, whatever their status in this case."

After the hearing, Mother objected to Grandfather representing Father because Grandfather would likely be called as a witness. She pointed out there was a pending motion concerning Father's use of parenting time at Grandfather's house. In response, Grandfather argued that he was not a material witness and countermotioned to disqualify Mother's lawyer. The district court denied both motions to disqualify; though, the court noted that "it would assume that [Grandfather] could not be both a witness/party and counsel."

The trial court bifurcated the issues of child custody and parenting time from issues of child support and spousal maintenance, noting that the court "would decide the parenting plan first and, ultimately, seek reassignment of this case to a family court judge after that, including the issues of child support." During the bench trial on the custody

and parenting time issues, the trial court heard testimony from several witnesses, including both parents and therapists for the children.

The trial court relied on the witnesses' testimonies—in addition to recommendations from the GAL and the case's procedural history—to conclude that granting Mother sole legal custody was in the children's best interests. On the issue of parenting time, however, the trial court found that reinstating the original parenting plan was in the children's best interests. In the original parenting plan, the parties alternated weekends with the four children; Father's parenting time during the week was set from Monday until Wednesday; and Mother had parenting time with the children from Wednesday until Friday. As the issues of custody and parenting time were settled, Judge Hauber recused himself and transferred the case to a family court judge, Judge Rokusek.

Shortly after the case was transferred, Mother again moved to disqualify Grandfather from representing Father. She relied on three rules: KRPC 3.3 (candor toward the tribunal) (2024 Kan. S. Ct. R. at 387); KRPC 3.4 (fairness to opposing party and counsel) (2024 Kan. S. Ct. R. at 391); and KRPC 3.7 (lawyer as witness). In support of her motion, Mother argued that litigation in the case would increase if Grandfather continued to represent Father, citing the 156 filings already entered in the case since Grandfather began representing Father.

Of those 156 filings, Mother emphasized three times when Grandfather—either willfully or accidentally—violated Kansas statutes, local rules, or ethics rules:

 (1) the filing of a business record subpoena on a former GAL in violation of Kansas statutes and the KRPC;
(2) the filing of subpoenas outside the district court's permitted scope; and
(3) the filing of a protective order which included the signature of Mother's lawyer when she had not reviewed the document.

Finally, Mother argued that Father would not suffer any prejudice if Grandfather were disqualified because Father was currently represented by both Grandfather and a local lawyer. Therefore, if the court disqualified Grandfather, Father would still be represented by a lawyer.

*The record displays astute observations by the judge and a deep analysis that compelled disqualification of Grandfather.*

In an order disqualifying Grandfather from representing Father, the district court reviewed the extensive history of the case and the "multitude of filings"—several of which the district court concluded "provided insight concerning whether [Grandfather] is a material witness in this case in the future." One such fact which the district court relied upon was that Grandfather had testified before as a witness in this case and emphasized his role as a defendant in the protection from abuse case pertaining to his grandson, L.D., where he also testified as a witness. The court then listed examples where Grandfather inserted himself into the case.

The first instance occurred at a status hearing shortly after the case was transferred to Judge Hauber and prior to Grandfather's entry of appearance as Father's counsel. At the hearing, Grandfather raised the issue of the no-contact order prohibiting contact between Grandfather and L.D.:

> "[I]t is, I think, imperative, Judge, I know I'm skipping ahead here, that a couple of other things get resolved in the meantime while we're waiting for this evaluation. One of them is *the existing order that prohibits me from being in contact with, now a ten-year-old,* [*L.D.*] because of something Judge Schoenig did after the ex parte order that had been entered was denied.
>
> "*I'd ask the Court* [*to*] *take a look at that* or at least—there's a motion on file that it be rescinded so that that can be opened up. I think that there's time for that to be argued in a hurry. It's not a long argument." (Emphases added.)

7

Later in the hearing, the court asked whether Grandfather would pay the bill for Father's supervised visitations with the minor children:

> "THE COURT: Are you footing the bill for that or is he going to foot the bill for that?
> "[Grandfather]: No, I am.
> "THE COURT: You are.
> "[Grandfather]: I have to pay for the depositions, Judge. He doesn't—"

In the same hearing, after determining that Grandfather would pay for Father's supervised visitations with the children, the district court directed the GAL to discuss visitation matters with Grandfather:

> "So, [GAL], anybody you want to talk about—would you like to visit with Grandfather so you—so we know how this is going to get done?"

After entering his appearance for Father, Grandfather cross-examined the witness, a reintegrative therapist for the four minor children and Father, at the bench trial on the issue of custody. Grandfather asked the therapist the following question:

> "And during that phone call, *one of the things that was important to me, since I was going be paying for this*, was an indication from you about just how long you think this might take." (Emphasis added.)

Following the therapist's testimony, Grandfather attempted once again to raise the issue of the standing no-contact order with L.D.:

> "One thing that is absolutely an issue, because we are talking about going forward with [L.D.], I have argument on the law and the facts but none of that matters. *That no-contact order that says that I can't go to a school where* [L.D.] *might be, or be in*

*his presence*, Judge, that is unlawful and needs to be dealt with. And I will argue it, or whatever, but we've got to do something." (Emphasis added.)

*The district court also relied on Judge Hauber's findings in the permanent parenting plan.*

In addition to instances in the record where Grandfather inserted himself in his son's case, the district court discussed Judge Hauber's findings memorialized in his order granting Mother sole legal custody of the minor children. In the order, the district court found particularly persuasive the following:

- "That either father *or* grandfather filed a complaint against the former therapist for the children."
- "A temporary order of protection was entered against [Grandfather]" preventing him "from having contact with L.D."
- The protection order "was dismissed in November of 2019 but the no contact order pertaining to parties['] son, L.D., was entered on this case."
- "Further, [Grandfather] has repeatedly reminded the Court of the Orders relating to the no-contact order pertaining to L.D., his grandson and the parties' son. Further, [Grandfather] is funding the litigation involved in this case."
- "*Father has reacted in a manner that can be described as passive aggressive . . . . This has been exacerbated, to some degree, by petitioner's father, a former Missouri judge, who has reacted personally to various police reports filed against him, and in particular, a petition for abuse allegation. For the most part, however, the Court believes it was able to draw the line between Grandfather serving as a legal counsel and family member in order to get this case resolved.*"

We must discuss Rule 3.7 of the Kansas Rules of Professional Conduct—Lawyer as Witness—and how it applied to Grandfather's role in this case. Most notably, Grandfather had already testified as a witness and, given the children are very young, litigation "could continue for the next 11 years considering the inability or unwillingness of the parties to co-parent." Applying the three-factor test for whether an attorney may be disqualified under KRPC 3.7, the district court made several findings of fact and conclusions of law.

*For motions to disqualify counsel, we must balance competing interests.*

When we review a district court's ruling on the disqualification of counsel, we look to see whether substantial competent evidence supports the court's findings of fact and whether the court's conclusion based on those findings was reasonable. See *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 266 Kan. 1047, 1052, 975 P.2d 231 (1999).

Motions to disqualify require district courts to balance several competing considerations. These include the privacy of the attorney-client relationship, the prerogative of the parties to choose their own counsel, and the hardships that disqualification imposes on the parties and the entire judicial process. *Quality Developers, Inc. v. Thorman*, 29 Kan. App. 2d 702, 711, 31 P.3d 296 (2001).

We note that attorney disqualification may be required if an ethics rule is violated by either party's lawyer. That is relevant here because the district court ruled that Grandfather was disqualified from representing Father based in part on KRPC 3.7 of the Kansas Rules of Professional Conduct. That rule provides:

> "(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

"(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." KRPC 3.7 (2024 Kan. S. Ct. R. at 395).

The comments under this rule are instructive. Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client. KRPC 3.7, comment 1.

The Rule's comments also provide the standard courts must use to determine whether a lawyer is a necessary witness. Whether the court is "likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses" with "due regard . . . to the effect of disqualification on the lawyer's client." KRPC 3.7, comment 4. Whether "one or both parties could reasonably foresee that the lawyer would probably be a witness" is also relevant. KRPC 3.7, comment 4.

*Substantial competent evidence supported the district court's disqualification of Grandfather from representing Father.*

Father argues that the district court's disqualification of Grandfather was erroneous. He supports his argument by stating that the court erred because a prior judge had already heard and denied a similar motion to disqualify. Next, he argues the court erred by finding that Grandfather was a necessary witness because Grandfather never

11

testified in the child custody and parenting time bench trial nor was he called as a witness in the later custody modification proceedings. Thus, Father argues, the district court's order disqualifying Grandfather as Father's lawyer was erroneous.

In the district court's disqualification order, the court considered both Judge Hauber's denial of the initial motions to disqualify and the Judge's subsequent observations and comments concerning Grandfather's involvement in the case. The court noted the many times that Grandfather inserted himself in the proceedings, even concerning issues unrelated to the case—Grandfather's PFA case. The court also relied on the KRPC and the standard for motions to disqualify counsel when it performed its analysis of whether Grandfather was a necessary witness.

The findings of fact detailed in the district court's order were reasonable and supported by the record. These findings supported the court's conclusion that Grandfather was a necessary witness because of four reasons:

1. the likelihood that his testimony would be material to the pending motion of whether Father's parenting time was spent at Grandfather's residence;

2. his testimony would unlikely be obtained elsewhere;

3. his examination of another witness would blur the line between questioning and testimony; and

4. the disqualification of Grandfather would not substantially prejudice Father given he still would be represented by counsel.

We have no doubt that with this case history, future conflict between Mother and Father and Grandfather is highly probable. This will cause Grandfather to have to testify. Therefore, the district court's decision to disqualify Grandfather from representing Father was reasonable.

*We find no abuse of discretion in the court's modification of the custody order.*

Father appeals the district court's modification of an earlier child custody order, arguing that the court abused its discretion by failing to consider the statutory factors provided in K.S.A. 23-3203. The district court modified the parties' parenting plan based on Mother's motion to adopt the status quo parenting time and to enforce the permanent parenting plan. In Mother's motion, she requested the parenting plan be modified to reflect the status quo—the actual parenting time exercised by Father. Mother did not request an oral argument on her motion and Father did not respond nor did he object to Mother's motion. Therefore, the district court ruled on the motion as permitted under Kansas Supreme Court Rule 133(c) (2024 Kan. S. Ct. R. at 214-15).

*The law that guides modification of child custody appeals is well-established.*

The district court is in the best position to make child custody determinations. In the absence of any abuse of sound judicial discretion, the district court's judgment will stand. To find an abuse of discretion, reviewing courts must look at whether the decision was (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on a factual error. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). The burden for proving a district court abused its discretion is borne by the party alleging its existence. See *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

The job of an appellate court "is not to delve into the record and engage in the emotional and analytical tug of war between two good parents over [their child]." *In re Marriage of Bradley*, 258 Kan. 39, 45, 899 P.2d 471 (1995). Rather, the district court holds the "better position to evaluate the complexities of the situation and to determine the best interests of the children." 258 Kan. at 45.

The law calls for specific findings and permits modifications only upon a material change of circumstances. Challenges to specific factual findings in support of these best interests determinations must be evaluated by viewing the evidence in the light most favorable to the prevailing party to determine whether they are supported by substantial competent evidence and support the district court's legal conclusion. *State, ex rel. Secretary, DCF v. M.R.B.*, 313 Kan. 855, 862, 491 P.3d 652 (2021). In addition, K.S.A. 23-3218(a) allows the court to modify any prior order of custody, residency, visitation, or parenting time upon a showing of a material change in circumstances. Appellate courts review modifications of these orders for an abuse of discretion. 313 Kan. at 861-62.

Kansas law does not precisely define what constitutes a "material change in circumstances" to justify modifying child support or child custody orders, but appellate courts have noted it "requires consideration of a variety of facts and circumstances [and] must be of such a substantial and continuing nature as to make the terms of the initial decree unreasonable. [Citations omitted.]" *In re Marriage of Nelson*, 34 Kan. App. 2d 879, 887, 125 P.3d 1081 (2006). Although a district court can modify previous orders of custody, residency, visitation, and parenting time, "a decree awarding child custody is res judicata with respect to the facts existing at the time of the decree." *Simmons v. Simmons*, 223 Kan. 639, 642, 576 P.2d 589 (1978); *In re Marriage of Bahlmann*, 56 Kan. App. 2d 901, 906, 440 P.3d 597 (2019).

*The district court did not abuse its discretion in modifying the permanent parenting plan.*

The district court did not abuse its discretion by modifying Father's parenting time to reflect the status quo of the actual parenting time that Father exercised. Father's argument on appeal centers on the fact that the court did not conduct a hearing on Mother's motion, and thus—he argues—the district court abused its discretion. He claims that the modification occurred "entirely without notice," but, in the same sentence, Father cites the journal entry which gave notice of the court's order to the parties.

14

Father also points to the district court's denial, without a hearing, of his pro se motions to reconsider the modification order. Father never requested oral argument or a hearing in his motion, however, so the district court's order was proper under Supreme Court Rule 133(c). And because Father was currently represented by counsel, his pro se motions were struck by the district court under K.S.A. 2023 Supp. 60-211(a).

A district court may modify a prior order of parenting time upon a showing of a material change in circumstances. See *M.R.B.*, 313 Kan. at 861-62. Because Mother showed a material change in circumstances—Father's voluntary nonexercise of his equal parenting time—the modification was proper under K.S.A. 23-3218(a). Therefore, the district court did not abuse its discretion by modifying the permanent parenting plan.

*Father was not denied due process.*

Father claims the district court erred in modifying child custody without granting Father the opportunity to be heard and therefore violated his due process rights. The district court modified the parties' parenting plan based on Mother's motion to adopt the status quo parenting time and to enforce the permanent parenting plan. In Mother's motion, she requested the parenting plan be modified to reflect the status quo—the actual parenting time exercised by Father. Mother did not request an oral argument on her motion, and Father did not respond, nor did he object to Mother's motion. Therefore, the district court ruled on the motion as permitted under Kansas Supreme Court Rule 133(c).

Under Rule 133(c), where neither party requests oral argument, the district court "may either set the matter for hearing or rule on the motion without a hearing and communicate the ruling to the parties." *In re Marriage of Bahlmann*, 56 Kan. App. 2d at 912. The district court did so here. Neither Mother nor Father requested oral argument on Mother's motion to modify the parenting time. Applying the authority under Rule

15

133(c)(2)(B), the district court ruled on the motion after waiting the requisite response time to allow Father to respond or object to Mother's motion.

Because no oral argument was requested and no response or objection was filed by Father, the district court properly ruled on Mother's motion without a hearing and appropriately communicated that ruling to the parties under Rule 133(c)(2)(B). There was no duty for the district court to hold a hearing in the absence of a request for a hearing, and Father further failed to respond or object to Mother's motion when there was ample time to do so. See *In re Marriage of Bahlmann*, 56 Kan. App. 2d at 912. Father was thus not prejudiced or denied due process.

The district court complied with Supreme Court Rule 133(c)(2)(B) and ruled on Mother's motion to modify the parties' parenting time. No due process violation occurred.

Affirmed.