(49 P.3d 547)
Nos. 84,496
85,607
87,089

NATIONAL BANK OF ANDOVER, N.A., *Plaintiff/Appellee*, v. AERO STANDARD TOOLING, INC., DONALD E. NOBLIT, and LORA JEANNE BLASE, *et al.*, *Defendants/Appellees*, and HERB JONES, *Intervenor/Appellant.*

Opinion filed June 28, 2002.

*Clifford L. Bertholf,* of Wichita, for intervenor/appellant Herb Jones.

*Henry H. Blase,* of the Law Offices of Blase & Blase, P.A., of Wichita, and Geary Gorup, of Wichita, for defendants/appellees Donald E. Noblit and Lora Jeanne Blase.

No appearance by appellee National Bank of Andover, N.A.

Before MARQUARDT, P.J., ELLIOTT and GERNON, JJ.

MARQUARDT, J.: Herb Jones appeals various decisions of the trial court concerning the priority of security interests in Aero Standard Tooling, Inc.'s (AST) assets. We affirm.

In December 1989, AST signed a major contract with Boeing which required equipment that AST did not have. AST was unable to obtain financing to purchase the equipment. Herb Jones and his father, Gomer Jones, who is now deceased, obtained financing from CIT Group (CIT) for the purchase of the equipment. CIT was granted a security interest in the equipment. The security interest has been released, and CIT is not a party to this action.

Gomer and Herb Jones leased the equipment to AST for 36 monthly payments of $4,000 commencing in January 1990. By March 1993, AST was in default on its payments to the Joneses in the amount of $26,501.20.

Three different banks filed foreclosure actions against AST. The litigation was settled, and one condition of the settlement was that the National Bank of Andover, N.A. (Bank) would have a priority security interest in all of AST's "collateral, inventory, equipment and everything related."

AST was eventually forced to cease operation because it owed money to the IRS and the Bank. Lynn Cole, AST's president, instructed Herb Jones to move AST's equipment to a different location. In 1997, the Bank foreclosed on AST's assets. Neither Gomer nor Herb Jones was named as a defendant in the foreclosure action.

Donald Noblit and Lora Jeanne Blase filed a cross-claim against the Bank, alleging that AST owed them $220,000 plus interest on a loan secured by a second mortgage on the real estate where AST offices were located. Noblit and Blase requested that the real estate be sold and the proceeds be applied against AST's indebtedness to them.

AST failed to answer the foreclosure petition. The trial court found that the allegations of the petition were true and that AST had waived the right of redemption in the mortgage. The trial court foreclosed the mortgage and awarded the Bank $294,627.11 plus 10 percent interest. The trial court found that Noblit and Blase's mortgage was junior to the Bank's mortgage. Noblit and Blase were awarded a judgment of $220,000 plus interest.

The journal entry of April 23, 1997, specified that unless the judgments were paid in full within 10 days, AST's assets would be sold and the proceeds would be paid in the following order: (1) costs of the litigation and the sale; (2) real estate taxes or special assessments upon the real estate; (3) $294,627.11 plus interest at the rate of $73.87 per day to the Bank until paid in full; (4) Somerset Leasing Group; (5) Noblit and Blase; (6) BRC Bearing Co., Inc.; (7) Q.E.D. Systems, Inc.; and (8) the remaining proceeds, if any, were to be applied according to a further court order.

After April 23, 1997, the Bank assigned its interest in ATS's foreclosed equipment and real property to Noblit and Blase. Thereafter, Noblit and Blase assigned these interests to Ed Petty Construction and Leasing, Inc. (Petty).

In 1999, the parties agreed to allow Herb Jones to intervene in the foreclosure action to present evidence of his claim that he owned certain items of AST's property.

The trial court ordered the sale of AST's assets after it failed to pay its outstanding judgments. The real estate and some additional equipment were sold to Petty for $600,000. After taxes and costs were deducted, the balance of $524,844.61 was applied to the judgment. Noblit and Blase filed a motion for confirmation of sheriff's sale, which was approved by the trial court.

In 2000, the trial court issued a writ of general execution allowing Noblit and Blase to seize and sell certain equipment to satisfy the foreclosure. Jones filed a motion to stay the execution, claiming that the Bank's judgment was satisfied by the sale of the real estate. Jones' motion was denied.

Petty purchased the equipment to which Jones claims ownership for $60,000. The trial court entered an order confirming the sale. Jones objected to the order of confirmation, which was overruled. The total sum of $60,000 less expenses of $7,572.44 was credited against the foreclosure judgment. Jones appeals various aspects of the trial court's rulings to this court.

Jones asks this court to order payment to him of $60,000 from the equipment sale as a first priority creditor. Jones contends that his perfected security interest through possession has priority over all other security interests and any execution under K.S.A. 60-2406. Jones argues that the Bank's judgment, which was later assigned to Noblit and Blase, was satisfied and the Bank's perfected security interest was extinguished once the Bank's judgment was satisfied.

The issues raised by Jones are questions of law. This court's review of questions of law is unlimited. See *First Nat'l Bank & Tr. v. Miami Co. Co-op Ass'n,* 257 Kan. 989, 998, 897 P.2d 144 (1995).

The history of the security interests in the property that is the subject of this litigation is as follows: Gomer and Herb Jones filed a Fleet Rental Security Agreement in December 1989, which gave them a perfected security interest in the equipment. See K.S.A. 2001 Supp. 84-9-310(a) *et seq*. There is no record that the Joneses filed a continuation statement. Thus, in December 1994, the Jo-

neses lost their perfected status in the equipment. See K.S.A. 2001 Supp. 84-9-515(e).

The Bank filed its financing statement which covered AST's equipment in March 1992. The Bank filed a continuation statement in December 1996, thereby extending its perfected status for another 5 years. See K.S.A. 2001 Supp. 84-9-515(e). The Bank assigned all of its rights under the security agreement to Noblit and Blase. In turn, Noblit and Blase assigned their rights to Petty. Petty took the assignment subject to any claims or defenses of AST. See K.S.A. 2001 Supp. 84-9-404(a)(2).

Under the Uniform Commercial Code, a perfected security interest has priority over a conflicting unperfected security interest. K.S.A. 2001 Supp. 84-9-322(a)(2). Conflicting security interests have priority according to the time of filing or perfection. *J.I. Case Credit Corp. v. Foos,* 11 Kan. App. 2d 185, 188, 717 P.2d 1064, *rev. denied* 239 Kan. 694 (1986).

Jones contends that he became a perfected secured party though possession of the personal property. The record on appeal indicates that Jones did not take possession of the subject property until February 1997. The Bank had filed its security interest in March 1992 and a continuation statement in December 1996, which gave it priority status through December 2001. This made Jones' status as a perfected secured party junior to the Bank's. See K.S.A. 2001 Supp. 84-9-322(a)(1).

The Bank was awarded a judgment of $294,627.11 in the foreclosure action. The trial court awarded interest at the rate of $73.87 per day until the debt was paid in full. The journal entry was filed on April 23, 1997. The first execution sale was held on October 13, 1999. Interest which would have accrued for 903 days would have been $66,704.61. The Bank's judgment plus interest totals $361,331.72.

Noblit and Blase held a mortgage in the amount of $220,000. The trial court awarded interest in the amount of 10 percent per year after March 13, 1997. The real estate was sold on October 13, 1999. Using rough calculations, we determine that Noblit and Blase's judgment plus interest amounted to $279,510. In addition, the trial court awarded Noblit and Blase costs and attorney fees in

the amount of $750. The total judgment due to Noblit and Blase is $280,260.

The Bank assigned its interests in the personal property and its superior mortgage to Noblit and Blase who then held both judgments. In turn, Noblit and Blase assigned their rights to Petty. Petty's outstanding judgment totals $641,591.72. Petty paid $600,000 for the real estate and some personal property at the sheriff's sale on October 13, 1999. The costs of the sale were $1,051.86. The record on appeal shows that AST owed $33,898.47 in outstanding real estate taxes. After the costs and taxes were subtracted from the amount of the sale, there was $565,049.67 remaining for disbursement.

Jones has no interest in the real estate. Through assignment from Noblit and Blase, Petty is entitled to reimbursement on his assigned mortgage rights. See *Mid Kansas Fed'l Savings & Loan Ass'n v. Zimmer*, 12 Kan. App. 2d 735, 736, 755 P.2d 1352 (1988). Thus, only $284,789.67 remained to satisfy the Bank's original judgment against AST's personal property. The Bank's judgment totaled $361,331.72, which leaves a $76,542.05 shortfall.

Petty purchased numerous items of personal property for $60,000 at the November 27, 2000, sale. It appears that some of the items purchased by Petty are the same items to which Jones claims ownership. Total expenses for the sale amounted to $7,572.44. That left $52,427.56 to be credited towards the outstanding judgment. The judgment balance after the October 13, 1999, sale was $76,542.05.

In satisfying debts when property is sold, the first in time perfected secured party must be paid before any subsequent perfected secured party. See K.S.A. 2001 Supp. 84-9-322(a)(1). Likewise, a mortgagee is entitled to recover profits from the foreclosure of a mortgage. Since Petty has still not been made whole for the debt which represents the Bank's interest in AST's personal property, there is no money to satisfy Jones' security interest.

Jones argues without citation to any relevant authority that the trial court erred by requiring him to maintain the burden of proof of his priority interest in the equipment. Jones believes that he should have had the same burden of proof as a properly pled de-

fendant to the case. He alleges that this error invalidates all of the trial court's findings of fact.

On appeal, the issue of an intervenor's burden of proof involves a question of law over which this court has unlimited review. See *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

The Kansas appellate courts have only addressed the issue of an intervenor's burden of proof in other types of cases. In *Purma v. Stark*, 224 Kan. 642, 643, 585 P.2d 991 (1978), the Kansas Supreme Court ruled that in a garnishment of a joint bank account, there is a presumption of equal ownership. Where there is a claim that the account is owned other than equally, the burden of proof is on the intervenor asserting such a claim. 224 Kan. at 644-45.

Jones argued at trial that the Bank should have had the burden to prove it was entitled to foreclose on AST's property. We have already concluded that the Bank, as a first in time perfected secured party, was entitled to foreclose on AST's property and recover the proceeds from its sale. The trial court correctly placed the burden of proof upon Jones, who was trying to prove that his perfected security interest in items of personal property was superior to the Bank's. We hold that where a party intervenes in a foreclosure action claiming priority over another perfected security interest, the intervenor has the burden of proving its priority.

Next, Jones claims that the trial court erred in denying his motion to disqualify Noblit and Blase's attorney. Jones filed his motion to disqualify prior to trial, claiming that the attorney had a conflict of interest and was a potential witness in the case because he served as an officer of AST and was personally involved in several of the relevant transactions. Jones' motion was renewed at the beginning of the trial. The motion was denied; however, the trial court noted that the matter could be revisited if it appeared the attorney would be a necessary witness on a material issue. Jones has cited no relevant authority to support his claim.

In deciding whether an attorney should be disqualified, we consider whether the trial court's findings of fact are (1) supported by substantial competent evidence and (2) sufficient to support the

conclusions of law. *Barragree v. Tri-County Electric Co-op, Inc.*, 263 Kan. 446, 454-55, 950 P.2d 1351 (1997).

The general rule regarding conflicts of interest is found at KRPC 1.7 (2001 Kan. Ct. R. Annot. 354). It reads, in relevant part:

> "A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> "(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> "(2) each client consents after consultation."

Under KRPC 1.7, the general rule for disqualification of an attorney is that the burden of proof is on the party who seeks disqualification. *Quality Developers, Inc. v. Thorman*, 29 Kan. App. 2d 702, Syl. ¶ 3, 31 P.3d 296 (2001). In deciding a motion to disqualify counsel, the trial court must balance several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties and the entire judicial process. 29 Kan. App. 2d at 711.

Jones' motion to disqualify is different from the typical motion under KRPC 1.7 because Jones is not claiming that his attorney had a conflict of interest. See *Barragree*, 263 Kan. at 456. Instead, Jones claims that Noblit and Blase's attorney had a conflict of interest. We do not believe that Jones has standing to raise the issue of a conflict with another party's attorney, and any discussion of a general conflict of interest is inappropriate.

Where the party seeking disqualification is also the one wanting to call the attorney as a witness, the court must be especially sensitive to the potential for abuse. *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 750, 876 P.2d 184 (1994).

The prohibition against a lawyer testifying for his or her client has its basis in the rules of evidence. The rule prohibiting a lawyer from acting as both an advocate and a witness on behalf of the client originated in the law of evidence as a corollary to the general principle that neither a party nor one aligned in interest with a party is competent as a witness on the party's behalf. *LeaseAmerica*, 19 Kan. App. 2d at 745.

KRPC 3.7 (2001 Kan. Ct. R. Annot 413) disqualifies a lawyer when there is a likelihood that the lawyer will be a "necessary" witness. This standard requires the opposing party to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can be determined that no other witness could testify, and obviates disqualification if the lawyer's testimony is merely cumulative. *LeaseAmerica,* 19 Kan. App. 2d at 751.

In *LeaseAmerica,* this court approved of the language used by the Supreme Court of Appeals of West Virginia, which noted that there are three factors to be considered when weighing a motion to disqualify an attorney because the opposing party desires to call the attorney as a witness. The West Virginia court considered: (1) whether it had been shown that the attorney would give evidence material to the determination of the issues being litigated; (2) whether the evidence could not have been obtained elsewhere; and (3) whether the testimony would have been prejudicial or potentially prejudicial to the testifying attorney's client. 19 Kan. App. 2d at 751.

The trial court acted appropriately by denying Jones' motion to disqualify pending further information. It appears that the trial court was willing to proceed with disqualification if it became necessary during the trial. Jones never called Noblit and Blase's attorney as a witness. Therefore, we cannot conclude that the trial court erred by denying Jones' motion. There is nothing for this court to review, since the trial court was never called upon to apply KRPC 3.7. Jones' argument to the contrary is without merit.

Jones argues that the sale of the property should have been stayed because he had a senior priority interest. Our standard of review here is abuse of discretion. Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. The party seeking the stay bears the burden of proof to establish that the stay is necessary. *State ex rel. Stovall v. Meneley,* 271 Kan. 355, 368, 22 P.3d 124 (2001). A stay in a civil case is an extraordinary remedy. 271 Kan. at 367.

Jones' basic premise is faulty because he does not have a senior interest. He is not entitled to recover any funds until all of Petty's

judgment is satisfied. Until that point in time, Jones' interests are subordinate. Jones' arguments to this court are without merit.

Affirmed.