No. 103,395

BARRY L. VENTERS, *Appellant*, v. SCOTT E. SELLERS, D.O.,
*Appellee.*
(261 P.3d 538)

Opinion filed
September 2, 2011.

*Scott J. Mann*, of Mann Law Offices, L.L.C., of Hutchinson, argued the cause,
and *Michael J. Wyatt*, of the same firm, was with him on the brief for appellant.

*Gerald L. Green,* of Gilliland & Hayes, P.A., of Hutchinson, argued the cause, and *Michael R. O'Neal,* and *Shannon L. Holmberg,* of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This is an interlocutory appeal from the district court's disqualification of Scott J. Mann as attorney for plaintiff.

## FACTUAL AND PROCEDURAL BACKGROUND

Barry L. Venters was a passenger in a single-car accident in January 2001. Venters was admitted to a Hutchinson emergency room, where he was evaluated by defendant Scott Sellers, D.O. In this lawsuit, Venters alleged that Sellers was negligent, resulting in Venters' paralysis. (Venters eventually died in 2010; his estate has been substituted as party plaintiff in this suit, but he and it will both be referred to in this opinion as "Venters.")

Mann represented Venters in the settlement of his separate claim against the driver of the car in which Venters was riding at the time of the accident. A Settlement Agreement and Release was executed, and it was sent to the driver's insurance company on February 19, 2001. In the accompanying letter, Mann stated: "I have also executed the Release as counsel for Barry L. Venters. I would advise that due to the paralysis he sustained as a result of the automobile accident, Barry is unable to sign his name."

Mann also attempted to reach a settlement with KaMMCO, Sellers' insurance carrier. In a letter to KaMMCO dated March 18, 2002, Mann stated:

"I have concluded that KaMMCO is not willing to settle Barry Venters' medical malpractice claim against Dr. Sellers. If we do not receive a settlement offer from KaMMCO, we will proceed with filing a formal lawsuit on Friday, April 12, 2002. In this regard, Matthew L. Bretz has agreed to assist as co-counsel in the prosecution of the claim in the event a lawsuit is filed."

Bretz filed Venters' petition in this case in June 2002. On May 19, 2004, Bradley D. Dillon of Gilliland & Hayes, P.A., attorney for Sellers, sent a letter to Bretz demanding that Bretz Law Offices withdraw from its representation of Venters because an associate at the Gilliland firm, Mitch Rice, had left there and gone to work for Bretz. The letter asserted that Rice had been privy to infor-

mation of a material and confidential nature on this case while at the Gilliland firm and that the resulting need for withdrawal extended to "co-counsel[] Scott Mann."

Bretz Law Offices rejected the demand for withdrawal, and Sellers filed a formal motion to disqualify "Bretz Law Offices and co-counsel Scott Mann from continued representation" of Venters. Attached to the motion was a copy of Dillon's May 19, 2004, letter demanding withdrawal. District Judge Richard J. Rome held a lengthy evidentiary hearing on the motion. The hearing focused exclusively on whether Rice had been privy to material and confidential information about this case while he was an associate at the Gilliland firm. Mann was not served with a copy of the motion and was not a witness at the evidentiary hearing. Neither the parties nor the court addressed Mann's role during the hearing.

In an August 2004 memorandum decision, Judge Rome ruled:

"Mr. Rice had actual knowledge of material and confidential information and case strategy, analysis and evaluation by virtue of his employment at Gilliland and Hayes and representation of Dr. Sellers and, in going to work for Plaintiff's counsel, has now become associated with a firm that represents a party materially adverse to Dr. Sellers. Continued representation of Plaintiff would violate KRPC Rules 1.[]9 and 1.10 and therefore Plaintiff's counsel and Mr. Rice, their firm and any co-counsel must be disqualified from further representation of Plaintiff."

Mann was not mentioned by name in either the findings of fact or conclusions of law in the memorandum decision.

After Judge Rome filed his decision on disqualification, Venters successfully sought an interlocutory appeal to our Court of Appeals. While the appeal was pending, Ryan Hodge entered his appearance as Venters' counsel in June 2006. Venters then voluntarily dismissed the interlocutory appeal.

More than 2 years later, in November 2008, Mann entered his appearance for Venters in district court. This prompted Sellers to move to disqualify Mann. Sellers acknowledged that "Bretz's office handled the [lawsuit] file." But he argued, first, that Judge Rome had already disqualified Mann as "co-counsel" and that the decision was res judicata, and, second, that Mann should be disqualified under Kansas Rule of Professional Conduct (KRPC) 3.7 (2010 Kan.

Ct. R. Annot. 562) as a necessary witness on causation of Venters' paralysis.

No evidentiary hearing was held on the 2009 motion to disqualify Mann. But Judge Rome had before him a copy of Mann's March 18, 2002, letter to KaMMCO, which had not been before him in 2004. He also had an affidavit from Michael R. O'Neal, Sellers' counsel, which stated that a representative of O'Neal's office had spoken with Ted Mandrell, a representative of the driver's insurance carrier. Mandrell "confirmed that Columbia Group Insurance made a decision to offer policy limits based upon information received from Mr. Mann, in particular, the fact that Mr. Venters was paralyzed as a result of the automobile accident." The affidavit also stated that O'Neal "intend[ed] to call Scott Mann as a witness . . . to question him regarding the conflicting positions taken with regard to causation of Plaintiff's injuries."

Judge Rome also had before him affidavits from both Mann and Bretz. In Mann's affidavit, he said that he had had no involvement with this case between the time he referred it to the Bretz law firm in May 2002 and his entry of appearance on behalf of Venters in November 2008. Bretz' affidavit reinforced Mann's, confirming that Bretz had acted as Venters' counsel, without Mann as cocounsel, from May 2002 until the dismissal of the first interlocutory appeal. The record on appeal discloses no contrary evidence on these points from Sellers.

Between the filing of the motion and Judge Rome's decision, Hodge withdrew from his representation of Venters.

Judge Rome filed a memorandum decision in July 2009 on the motion to disqualify Mann. It did not contain a labeled section for findings of fact, but Judge Rome referenced several of his own observations and explicitly adopted the statement of facts in Sellers' motion.

Judge Rome concluded that res judicata applied and that he would "uphold" his "previous disqualification of . . . Mann." He based this conclusion specifically on Mann's March 18, 2002, letter to KaMMCO, stating that Bretz would serve as his cocounsel in the event of a lawsuit against Sellers; Dillon's May 19, 2004, letter naming Mann in the request for withdrawal; Sellers' 2004 dis-

qualification motion, naming Mann as cocounsel; and his own 2004 memorandum decision's mention that disqualification extended to all "co-counsel."

Judge Rome also concluded that Mann was "a possible witness in this matter. The courts have held, and the rules of professional conduct so provide, that an attorney likely to testify at trial on a contested issue (here, causation) requires that the attorney be barred from serving as plaintiff's advocate at trial." Judge Rome specifically relied upon his view that Mann was a "possible" witness in this matter; his assessment that Mann was "likely" to testify on the contested question of causation; his anticipation that Mann would be listed and called as a defense witness at trial on Mann's "conflicting representations" about the cause of Venters' paralysis; his belief that Mann "admitted" in settling the auto case that Venters' paralysis resulted from the automobile accident rather than any medical malpractice by Sellers; and his belief that the driver's insurance company had settled Venters' claim because it believed his paralysis was caused by the car accident.

Venters urged Judge Rome to reconsider Mann's disqualification. When Judge Rome refused, Venters sought this interlocutory appeal, stating that the case "involves a question of first impression in Kansas, *i.e.*, whether an attorney that refers a medical malpractice case to another attorney has a conflict of interest and should be disqualified from representing the plaintiff in the case." Venters also mentioned that Mann had been disqualified as his counsel "on the basis of *res judicata* and/or the basis that he was a necessary witness in the case."

Judge Rome certified the following questions for this interlocutory appeal:

"Whether a conflict of interest exists that would disqualify a referring attorney from later representing a client in a medical malpractice case when: (1) the attorney to whom the client was referred is subsequently disqualified by way of a former client conflict, and the client elects to have the referring attorney assume representation; and (2) the referring attorney represented the same client in a settled automobile accident claim underlying the medical malpractice action, which the party seeking disqualification contends effectively renders the referring attorney a 'necessary witness' in the medical malpractice claim under K.R.P.C.

3.7 and applicable case law because the referring attorney may be called to testify as to the nature of the settlement of the automobile case."

The judge did not mention res judicata.

Venters' application for interlocutory review to the Court of Appeals framed the questions in a manner consistent with but not identical to Judge Rome:

"[W]hether attorney disqualification may be imputed between attorneys in different law firms who share only a referral relationship[, and w]hether an attorney who represents a plaintiff in claims against multiple defendants for two separate negligent acts is properly disqualified as a necessary witness merely for his role in settling a claim against one of the defendants."

The Court of Appeals granted Venters permission to take this appeal, and we transferred the case on our own motion. We address three distinct issues: Whether Judge Rome had a legally permissible basis to disqualify Mann in 2004; whether the 2004 disqualification of the Bretz law firm had any preclusive effect on the Mann disqualification decision in 2009; and whether Mann was subject to disqualification in 2009 because Sellers asserted that Mann would be a defense witness on causation.

## DISCUSSION

### Standards of Review

We have held that "[o]rdinarily the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge . . . . Except where a purely legal issue is involved, a district court's order of disqualification will be reversed only if the court has abused its discretion." *Parker v. Volkswagenwerk Aktiengesellschaft*, 245 Kan. 580, 585, 781 P.2d 1099 (1989). We invoke a de novo standard of review when disqualification is based upon disciplinary or ethical rules. See *Chrispens v. Coastal Refining & Mktg. Inc.*, 257 Kan. 745, 761, 897 P.2d 104 (1995) (disqualification of counsel under ethical rules adopted by court question of law); see also *State v. Dimaplas*, 267 Kan. 65, Syl. ¶ 1, 978 P.2d 891 (1999) (standard of appellate review on whether disciplinary rule prohibits certain professional conduct question of law subject to plenary review).

In our recent decision in *State v. Gonzalez*, 290 Kan. 747, 755, 234 P.3d 1 (2010), we recognized that our most forgiving abuse of discretion standard of appellate review still has multiple layers. "[E]ven under the deferential abuse of discretion standard of review, an appellate court has unlimited review of legal conclusions upon which a district court judge's discretionary decision is based." 290 Kan. at 755. In this case, for example, the question of whether Judge Rome's 2004 disqualification decision had preclusive effect is subject to unlimited appellate review. See *In re Care & Treatment of Sporn*, 289 Kan. 681, 686, 215 P.3d 615 (2009) (applicability of res judicata, collateral estoppel question of law subject to unlimited review).

We further explained in *Gonzalez* that a district court's factual findings must be supported by substantial competent evidence to pass appellate muster. 290 Kan. at 756.

"[S]ubstantial competent evidence is that which 'possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can *reasonably* be resolved. In other words, substantial evidence is such legal and relevant evidence as a *reasonable* person might accept as being sufficient to support a conclusion.' " *Gonzalez*, 290 Kan. at 757 (quoting *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 2, 136 P.3d 390 [2006], *cert. denied* 549 U.S. 1278 [2007]).

In turn, factual findings must be sufficient to support the legal conclusions dependent upon them. *Gonzalez*, 290 Kan. at 757; see *Zimmerman v. Mahaska Bottling Co.*, 270 Kan. 810, 814, 19 P.3d 784 (2001); *Chrispens*, 257 Kan. at 761.

As we apply these standards of review in this case, we are also keenly aware that disqualification of counsel has the potential for great negative impact, depriving a party of the counsel of his or her choice. *Zimmerman*, 270 Kan. at 814. Therefore, "[m]otions to disqualify should be reviewed with extreme caution, for they can be misused as a technique of harassment." *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 266 Kan. 1047, 1057, 975 P.2d 231 (1999).

*Permissibility of 2004 Mann Disqualification*

We begin our analysis with a determination whether it was legally permissible in 2004 for Judge Rome to disqualify Mann as

cocounsel based on the imputed disqualification of the Bretz firm. This determination matters, because both Sellers and the judge relied upon the existence of a valid 2004 disqualification of Mann to justify the decision Judge Rome made 5 years later, that is, the decision we review today.

We first take up the subject of our power to examine the merits of Judge Rome's 2004 decision, insofar as it addressed Mann. Although it is true that Venters dismissed his earlier interlocutory challenge, that dismissal poses no jurisdictional or prudential bar to our consideration of Mann's 2004 disqualification today. Venters' first interlocutory appeal focused exclusively, as did the evidentiary hearing in the district court from which it flowed, on whether Rice acquired material and confidential information in the course of his earlier employment with the Gilliland firm, thus necessitating the imputed disqualification of his new employer, the Bretz firm. It had absolutely nothing to do with disqualification of Mann as the Bretz firm's referral source or cocounsel on any legal or factual basis. In contrast, in this appeal, neither side is asking us to revisit the disqualification of the Bretz firm; and we need not reach whether Venters' voluntary dismissal of his interlocutory appeal on that issue would prevent him from raising it again via this later interlocutory appeal. Compare *Flores Rentals v. Flores*, 283 Kan. 476, 491, 153 P.3d 523 (2007) (only remedies for party challenging order disqualifying counsel: interlocutory appeal, appeal after final decision); K.S.A. 2010 Supp. 60-2102(c) (Court of Appeals may allow interlocutory appeal "if application is made to it within 14 days after the entry of the order" of district court). Today we concern ourselves only with the 2009 Mann disqualification, and the correctness of any decision Judge Rome made or purported to make about Mann in 2004 is properly before us as the 2009 decision's indispensable infrastructure.

In 2004, Judge Rome ruled that the Bretz law firm must be disqualified from representing Venters in this case because of Rice's employment at the Bretz firm after his move from the Gilliland firm. This disqualification of the Bretz law firm is known as "imputed disqualification." See, *e.g.*, *Monroe v. City of Topeka*, 267 Kan. 440, 446, 988 P.2d 228 (1999). Any knowledge of material

and confidential information on the Sellers' side of this case that Rice acquired while he was employed at the Gilliland firm was "imputed" to his new employer, the Bretz firm. The only question before the court was whether Rice had acquired such knowledge, and Judge Rome decided that he had. Thus, Rice had to be disqualified personally and his new firm was subject to imputed disqualification. There was no dispute on whether Rice's new firm was the Bretz law firm.

Mann's situation in 2004 stands in complete contrast. He was not subject to disqualification personally. Unlike Rice, Mann possessed no material and confidential information gained from the Sellers' side of the case while affiliated with the Gilliland firm. If Mann was subject to disqualification at all, it had to be imputed disqualification because Judge Rome deemed Mann a part of the Bretz law firm at which Rice was a new employee.

At the time of Judge Rome's 2004 decision, KRPC 1.10 provided:

"(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2

"(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

"(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.

"(d) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7." (2004 Kan. Ct. R. Annot. 402-03.)

The Comment to Rule 1.10 suggested that a functional analysis was the best approach for addressing imputed disqualification in the situation where a lawyer moves between law firms and noted that "[t]wo functions are involved: [p]reserving confidentiality and

avoiding positions adverse to a client." (2004 Kan. Ct. R. Annot. 405.)

The Terminology section of Rule 226 (2004 Kan. Ct. R. Annot. 335), the umbrella rule for the Kansas Rules of Professional Conduct, defined a law firm in the following manner: " 'Firm' or 'Law firm' denotes a lawyer or lawyers in a private firm, lawyers employed in the legal department of a corporation or other organization[,] and lawyers employed in a legal services organization." (2004 Kan. Ct. R. Annot. 341.) The Comment to Rule 1.10 also was helpful on the meaning of the term "firm":

"For the purposes of the Rules of Professional Conduct, the term 'firm' includes lawyers in a private firm, and lawyers employed in the legal department of a corporation or other organization, or in a legal services organization. *Whether two or more lawyers constitute a firm within this definition can depend on the specific facts.*" (Emphasis added.) (2004 Kan. Ct. R. Annot. 403.)

This Comment also set out factors to be considered in determining whether the relationship between two practitioners meant that they constituted a "firm" for purposes of the rule. These factors included shared office space, representations to the public that the lawyers constitute a firm, conduct of practice as a firm, the terms of any formal agreement between the lawyers, and mutual access to confidential client information.

According to the Comment, whether the lawyers represented themselves as a firm and/or conducted themselves as a firm was paramount. If it was unclear whether two attorneys formed a "firm" for purposes of Rule 1.10, the underlying purpose of the rule—to give effect to the principle of loyalty to the client—should be vindicated. (2004 Kan. Ct. R. Annot. 403.)

When Judge Rome was making his decision about the imputed disqualification of the Bretz law firm in 2004, there was no substantial competent evidence before him to support either factual findings or, in turn, an ultimate legal conclusion that Mann must also be subject to imputed disqualification. Sellers' motion to disqualify and its attached copy of Dillon's letter referring to Mann as "co-counsel" constituted mere allegations from an opposing party, which, in this context, should have been viewed with a jaundiced eye. See *Associated Wholesale Grocers, Inc.*, 266 Kan. at

1058. Even assuming those allegations were accurate, they did not make Mann's imputed disqualification automatic. See ABA Annot. Model Rules Professional Conduct Rule 1.10, p. 176 ("When two lawyers from different firms serve as co-counsel in a matter, their relationship does not mean that the conflicts of each are imputed to the firm of the other."). Judge Rome failed to analyze the import of cocounsel or referring counsel status under the governing legal standard set forth in KRPC 1.10, its Comments, and its associated definitions. He did no functional analysis of the specific facts of any association between Mann and the Bretz law firm. He conducted no examination of whether Mann was part of the firm—whether they shared office space, represented to the public that they were a "firm," practiced jointly, had any formal agreement, or granted each other access to confidential client information.

Without the appropriate legal analysis, Judge Rome could not extend the 2004 imputed disqualification of the Bretz law firm to Mann. See *Gonzalez*, 290 Kan. at 756 (failure to abide by legal framework constitutes abuse of discretion).

*Preclusive Effect of 2004 Bretz Law Firm Disqualification*

Judge Rome also referenced res judicata as influential in his 2009 decision, and Sellers leaned heavily upon it in his appellate brief. Having ruled that Mann could not be disqualified in 2004, we examine only whether the imputed 2004 disqualification of the Bretz law firm, unchallenged on this appeal, exerted some preclusive effect in the 2009 dispute over Mann's status. For the sake of completeness, and because preclusion is inextricably intertwined with the interlocutory appeal questions certified for our review, see *Williams v. Lawton*, 288 Kan. 768, Syl. ¶ 5, 207 P.3d 1027 (2009), we examine the potential applicability of res judicata, collateral estoppel, and law of the case doctrine. See *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988) (res judicata sometimes used as blanket term covering res judicata, collateral estoppel); *Knowles v. Fleetwood Motorhomes of California, Inc.*, 40 Kan. App. 2d 573, 577, 194 P.3d 38 (2008) (same).

### Res Judicata

Although Judge Rome's 2009 decision relied in part on res judicata, he did not mention the full test this court has set out to determine whether a prior adjudication is res judicata, nor did he determine whether a final judgment on the merits had been reached in this case.

This court has stated:

"Kansas law provides that four conditions must be met in order that a prior adjudication becomes res judicata . . . 'An issue is res judicata when four conditions concur: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of persons for or against whom claim is made.' " *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284 (2002).

In addition, "res judicata requires a prior final judgment on the merits." *State v. Flores*, 283 Kan. 380, 384, 153 P.3d 506 (2007).

Sellers' brief noted the factors above and stated that "[u]nder the doctrine of *res judicata*, a final judgment by a court on all the merits of an action is conclusive, not only on all matters which were actually litigated, but on any and all matters which could have been litigated by the parties or their privities in that action." Sellers' brief, however, did not explain how Judge Rome's 2004 disqualification decision constituted a final judgment on the merits in this case. Moreover, at oral argument before us, apparently realizing this weakness in his argument and Judge Rome's rationale, Sellers' counsel conceded that the doctrine of res judicata was not applicable in this case. We need not discuss it further.

### Collateral Estoppel

Under Kansas law, the application of collateral estoppel or issue preclusion to prevent a party from attacking a prior adjudication has three conditions:

" '(1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment.' " *Waterview Resolution Corp.*, 274 Kan. at 1023.

These conditions are not met here. Again, there has been no prior judgment on the merits of this case.

### Law of the Case

Under the doctrine of law of the case, which Judge Rome at least arguably invoked when he stated in his 2009 decision that he was "upholding" his 2004 decision, "[t]his court is firmly committed to the rule that the trial court cannot be required to either again review and pass upon what it has already determined or ignore its previous ruling." *Hodge v. Freeman*, 187 Kan. 650, 654, 359 P.2d 845 (1961). "[O]nce an issue is decided by the court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice." *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998). But law of the case doctrine is "a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so." 263 Kan. 629, Syl. ¶ 2; see also *Investcorp v. Simpson Investment Co.*, 277 Kan. 445, 85 P.3d 1140 (2003).

Like res judicata and collateral estoppel, law of the case has preclusionary effect. *Collier*, 263 Kan. at 633-34. But it also differs in important respects.

" 'The doctrine of the law of the case is similar to other preclusionary doctrines such as collateral estoppel, res judicata and stare decisis. While all of the doctrines act to prevent a party from raising issues that have already been decided, differences do exist between them.

" 'The law of the case and collateral estoppel are different in that collateral estoppel prevents the relitigation of issues in successive suits between the same parties; the law of the case prevents relitigation of the same issues within successive stages of the *same* suit. Res judicata differs from the law of the case in that it settles the rights of the parties once the judgment is final. The law of the case does not settle rights; it only settles the law to be applied in determining the rights of the parties. Also, many courts view res judicata as a rule of law, whereas the law of the case is merely a practice to guide the court.

" 'The law of the case probably most resembles the doctrine of stare decisis. Stare decisis dictates that like cases should be decided alike in the same jurisdiction. Stare decisis has a much broader impact than the law of the case, though, because it applies equally to all litigants, even strangers to the existing suit.' " *Collier*, 263 Kan. at 634 (quoting Note, *McDonald's Corp. v. Hawkins and the "Law of the Case" Doctrine in Arkansas*, 50 Ark. L. Rev. 127, 130-31 [1997]).

Most important here, law of the case doctrine does not require a final judgment on the merits. It allows a court to avoid relitigation of an issue that has already been determined in an earlier stage of the lawsuit, but before a final judgment has been reached. *Collier*, 263 Kan. at 634. Still, law of the case doctrine has been "sparingly appl[ied]" by this court. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 79, 150 P.3d 892 (2007).

Had Judge Rome determined the outcome of the 2004 motion to disqualify as to Mann on actual evidence under the correct legal standard, law of the case doctrine would have discouraged relitigation of that question in 2009. As fully discussed above, that did not occur. And Judge Rome's 2004 decision on the imputed disqualification of the Bretz law firm does not support "sparing" application of law of the case doctrine. The question of imputed disqualification of the Bretz law firm rose and fell on the question of whether Rice acquired material and confidential information about Sellers and this case while Rice was employed by the Gilliland law firm. Imputed disqualification of Mann required proof of an entirely different matrix of factors relevant to whether he was part of the Bretz law firm. On this issue, on the sparse record before him, Judge Rome could not have made a defensible decision in 2004. Thus, there was nothing for Judge Rome to "uphold" in 2009, and it was an abuse of discretion for him to attempt to do so merely by alluding to law of the case doctrine.

## 2009 *Disqualification of Mann as Witness*

Judge Rome's alternative 2009 basis for disqualifying Mann was his belief that Mann was a "possible" witness in this matter "likely" to testify favorably to the defense on the contested question of causation. He regarded Mann's mention in his February 19, 2001, letter to the driver's insurance company of "paralysis [Venters] sustained as a result of the automobile accident" as one of Mann's "conflicting representations" on the cause of Venters' paralysis. Apparently Judge Rome also viewed Mann's settlement of Venters' claim against the driver as another "admission" that the auto accident, rather than Sellers' malpractice, was the cause of Venters' paralysis.

This court has evaluated whether an attorney must be disqualified as a necessary witness by looking at what is required of an attorney under the Kansas Rules of Professional Conduct, specifically Rule 3.7 and its modifying rules, Rule 1.7 and Rule 1.9. *Dimaplas*, 267 Kan. at 68. Only Rules 3.7 and 1.7 are relevant here.

KRPC 3.7, Lawyer as Witness, states:

"(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
(2)the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
"(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." (2009 Kan. Ct. R. Annot. 562).

KRPC 1.7, Conflict of Interest: Current Clients, states:

"(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
"(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing." (2009 Kan. Ct. R. Annot. 472-73.)

This court has noted that "KRPC 3.7 prohibits a lawyer from being an *advocate at a trial* in which the lawyer is a material witness on a contested issue." (Emphasis added.) *Dimaplas*, 267 Kan. at 71 (citing *In re Harris*, 261 Kan. 1063, 934 P.2d 965 [1997]). Comment 1 to KRPC 3.7 states that the concern underlying this rule is

that "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." (2009 Kan. Ct. R. Annot. 562.) Comment 2 to KRPC 3.7 further explains that "[t]he opposing party has proper objection where the combination of roles may prejudice that party's right in the litigation." (2009 Kan. Ct. R. Annot. 562.)

The burden of proof on showing if an attorney is "likely to be a necessary witness" in a motion to disqualify under KRPC 3.7 is generally on the moving party. *Chrispens*, 257 Kan. at 755. In *Chrispens*, we reaffirmed that the burden of proof to disqualify an attorney under Rule 1.9(a), which, like Rule 1.7, deals with conflict of interest, is upon the party alleging the conflict. *Chrispens*, 257 Kan. at 755; see *e.g.*, *National Bank of Andover, N.A. v. Aero Standard Tooling, Inc.*, 30 Kan. App. 2d 784, 792, 49 P.3d 547 (2002); *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 746, 750, 876 P.2d 184 (1994). Federal cases also place the burden of proof under these circumstances on the movant. See, *e.g.*, *Chapman Engineers v. Natural Gas Sales Co.*, 766 F. Supp. 949, 957 (D. Kan. 1991). Placing the burden of proof on the party seeking disqualification is consistent with this court's concern with avoidance of abusive practice. See *Associated Wholesale Grocers, Inc.*, 266 Kan. at 1057-58 (purpose of rules of professional conduct can be subverted when used by opposing parties as procedural weapons).

Our Court of Appeals has further observed that the potential for abuse of disqualification motions is heightened when the party seeking to call an attorney as a witness is the same party seeking disqualification, as here. See *National Bank of Andover*, 30 Kan. App. 2d at 791 (citing *LeaseAmerica Corp.*, 19 Kan. App. 2d. at 750). The United States District Court for the District of Kansas has expressed this same sentiment. See *Chapman*, 766 F. Supp. at 959 (citing *Federal Deposit Ins. Corp. v. Frazier*, 637 F. Supp. 77, 81 [D. Kan. 1986]). We agree. The burden of demonstrating the need for disqualification of Mann under Rule 3.7 properly rests with Sellers.

This court has not previously articulated an analytical approach for determining whether an attorney is "likely to be a necessary

witness" under KRPC 3.7 when the opposing party is the party seeking disqualification. But we have noted generally that a court should consider "the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties and the entire judicial process." *Lansing-Delaware Water District v. Oak Lane Park, Inc.*, 248 Kan. 563, 571, 808 P.2d 1369 (1991).

Our Court of Appeals has provided further sound guidance:

"There are three factors to be considered when weighing a motion to disqualify an attorney because the opposing party desires to call the attorney as a witness: (1) whether it has been shown that the attorney would give evidence material to the determination of the issues being litigated; (2) whether the evidence could not have been obtained elsewhere; and (3) whether the attorney's testimony would have been prejudicial or potentially prejudicial to the testifying attorney's client." *National Bank of Andover*, 30 Kan. App. 2d 784, Syl. ¶ 9.

See also *LeaseAmerica Corp.*, 19 Kan. App. 2d at 750-51. The first and second factors listed by the Court of Appeals go to the question of whether the attorney is in fact a "necessary witness." The third factor addresses the concern of a concurrent conflict of interest between an attorney and his or her client expressed in KRPC 1.7.

Before Judge Rome, Sellers argued that Mann would be a necessary trial witness because of his February 19, 2001, letter and because of the decision of the driver's insurance company to settle Venters' claim for the driver's policy limits. Judge Rome's ultimate decision to disqualify Mann because of his witness status appears to have been based solely on Mann's 2001 letter and O'Neal's affidavit. At oral argument before this court, however, counsel for Sellers no longer took the position that Mann was likely to be called as a witness on causation. Still, he characterized Mann's 2001 letter as a possible admission against his client's interest.

We detect several fatal legal and factual infirmities in Sellers' shifting positions and Judge Rome's decision on this issue.

First, Sellers' assertion that counsel for plaintiff can be pressed into service as a defense causation witness in a medical malpractice case has no legal foundation. The establishment or contest of causation in such a case requires expert medical testimony. Plaintiff's cases lacking such testimony are vulnerable to defense summary

judgment motions. See *Puckett v. Mt. Caramel Regional Med. Center*, 290 Kan. 406, 435-36, 228 P.3d 1048 (2010) (requiring expert testimony in order for evidence to be sufficient to create jury question on whether superseding, intervening cause was not foreseeable); *Maunz v. Perales*, 276 Kan. 313, 322, 76 P.3d 1027 (2003) (noting expert testimony generally required in medical malpractice cases to prove causation); *Hare v. Wendler*, 263 Kan. 434, 440-41, 949 P.2d 1141 (1997) (same). On the record before us, Mann did not attend medical school or otherwise obtain the knowledge, skill, or experience necessary to give a qualified medical expert opinion on the causation of his client's paralysis. Any statement he made about the event from which his client's paralysis resulted was never going to be admissible to challenge the contrary opinion of a physician.

Second, it is also doubtful that Mann's reference in his 2001 letter or any argument he made to the driver's insurance company representative in an effort to settle Venters' claim would otherwise be admissible. The facts of this case are similar to those in our Court of Appeals' *LeaseAmerica Corp.* case, in which counsel for one party sought to disqualify counsel for the opposing party on the ground that counsel should be entitled to examine opposing counsel regarding "the contents of letters [opposing counsel] wrote on behalf of LeaseAmerica to Stewart's former attorney." *LeaseAmerica Corp.*, 19 Kan. App. 2d at 741. The correspondence occurred as part of a discussion in an effort to avoid a lawsuit in the case. The Court of Appeals reversed the district court's disqualification decision, stating:

"We recognize that in the real world attorneys correspond with each other in an attempt to resolve disputes before resorting to litigation. An attorney has a duty to zealously represent a client, and *the representation should not be overshadowed by the concern that what an attorney wrote in a letter to opposing counsel during the dispute resolution process may later be used by the opponent as a tactical weapon under the guise of MRPC 3.7.*" (Emphasis added.) *LeaseAmerica Corp.*, 19 Kan. App. 2d at 752.

Here, Mann's letter was sent to the driver's insurance company, not opposing counsel, but the same principle applies. The letter accompanied a settlement agreement and release designed to me-

morialize Mann's successful effort to settle Venters' claim against the driver. If an attorney can easily be called to testify about such settlement documents in subsequent ancillary litigation, then the representation risks being "overshadowed" by an attorney's concern that anything he or she puts in writing may lead to disqualification. *Cf. Griffin v. Suzuki Motor Corp.*, 280 Kan. 447, 451-52, 124 P.3d 57 (2005) (noting offers and acceptances of settlements are generally inadmissible).

There is yet another reason why Mann's letter and settlement position vis-a-vis the driver's insurance carrier would be likely to be inadmissible in the trial of this case. References to parties' insurance coverage generally are not permitted. See, *e.g.*, K.S.A. 60-454 ("Evidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible as tending to prove negligence or other wrongdoing."); *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 629, 244 P.3d 642 (2010) (noting "Kansas' long-standing position that insurance should not be interjected in a trial"). Although the insurance company with whom Mann negotiated on Venters' behalf was not the carrier for a party to this suit, admission of evidence touching on Venters' recovery of insurance proceeds from any source had the potential to exert unduly prejudicial downward pressure on any verdict.

Sellers' argument on this issue also fails because Judge Rome again applied the wrong legal standard.

The judge concluded that Mann was a *"possible* witness" and that the rules of professional conduct "require[d]" barring any attorney "likely to testify." This is incorrect. KRPC 3.7 provides that an attorney's testimony must not only be possible or likely but necessary. (2009 Kan. Ct. R. Annot. 562); see *LeaseAmerica Corp.*, 19 Kan. App. 2d at 747 (noting that the language in KRPC 3.7 "requires an even more specific showing of necessity"). And, even if Sellers had shown necessity, Comment 4 to KRPC 3.7 explains that a judge should apply a balancing test rather than automatically disqualify. (2009 Kan. Ct. R. Annot. 563); see *Lansing-Delaware Water District*, 248 Kan. at 571. There is nothing in the record to

suggest that Judge Rome was aware of or engaged in any sort of balancing test.

Judge Rome also erred by going too far with his remedy. Mann was disqualified "as the attorney for Plaintiff," while KRPC 3.7 only prohibits disqualified counsel from acting as an "advocate at a trial." See *Dimaplas*, 267 Kan. at 71 (stating that "KRPC 3.7 prohibits a lawyer from being an *advocate at a trial*" [emphasis added]).

Finally, even if all of the legal infirmities reviewed above could be disregarded, there was also an absence of substantial competent evidence to support Judge Rome's decision on this issue. Sellers failed to come forward with evidence that Mann was a necessary witness. His 2001 letter and his settlement position on behalf of Venters on the claim against the driver did not exist in a vacuum. It is possible that representatives of the driver's insurance company also could testify about the subject matter Sellers considered so vital to his defense.

## CONCLUSION

The decision of the district judge disqualifying Scott J. Mann is reversed, and this case is remanded to the district court for further proceedings. Given Judge Richard J. Rome's retirement, this case must be assigned to a different district judge.

MERLIN G. WHEELER, District Judge, assigned.