(330 P.3d 1124)
No. 110,553

STORMONT-VAIL HOSPITAL and COTTON O'NEIL CLINIC,
*Appellant*, v. SAMUEL S. IMLER, *Appellee*.

Opinion filed July 25, 2014.

*Stephanie B. Poyer* and *Todd B. Butler*, of Butler & Associates, P.A., of Topeka, for appellant.

No appearance by appellee.

Before MALONE, C.J., ARNOLD-BURGER, J., and BUKATY, S.J.

ARNOLD-BURGER, J.: Samuel S. Imler was involved in a bar fight and, when the Topeka police officer arrived and arrested him, he refused medical treatment. However, the police officer took him to Stormont-Vail Hospital for treatment. He remained in custody until his release after posting bond the next day. Stormont-Vail Hospital and Cotton O'Neil Clinic (collectively, the Hospital) brought suit against Imler for his hospital care in the amount of $3,825.20. Imler did not dispute the amount of the bill; he simply argued that the Topeka Police Department should be responsible for it. After trial, the trial court found that Imler was responsible for the medical treatment provided. However, the trial court found, on its own motion, that the charge was not reasonable and reduced it to $2,000. In addition, the trial court further ordered Imler to make payments of $50 per month on the debt. The Hospital appeals the trial court's order allowing Imler to pay a lesser

amount and to pay it in $50 monthly installments. Because we find that the trial court lacked both the authority and the evidence to reduce the amount owed and direct the method of payment, we reverse its decision and order the case be remanded for entry of judgment in favor of the Hospital for the full amount of $3,825.20.

## FACTUAL AND PROCEDURAL HISTORY

On May 3, 2012, Imler had a couple of drinks with some friends at a bar. Before he left the bar, Imler had a third drink given to him by an acquaintance and then left the bar on his motorcycle. Imler testified that at the time he left the bar, he did not feel intoxicated at all. However, while driving, he began to feel impaired and stopped at a restaurant. Imler did not believe that his intoxication was due to alcohol but was from a substance that was put in his third drink at the bar by the person that gave him the drink. When he arrived at the restaurant, he ordered another drink and thought about calling his girlfriend. Imler testified that his last clear memory was looking at his drink. The next clear memory he had was being handcuffed in a police car.

During the time he was incoherent, Imler deduced that he had been attacked at the restaurant; he fought back and ended up with lacerations on his face and a broken hand. The night of the altercation, Imler refused medical treatment. However, a Topeka police officer transported him to the Hospital against his wishes, apparently when the Shawnee County Jail refused to accept him. The Hospital performed a CT scan of Imler's face and head, and performed an x-ray of his wrist, but Imler does not recall the tests being done. He was released from the Hospital into the custody of a Topeka police officer, who then took him to the Shawnee County Jail.

After Imler was released from jail, he went to work, but his boss would not allow him to do any work because Imler's hand was causing him pain. After he left work, Imler went to the hospital to have his hand treated. He paid for the treatment he received that day because he requested treatment. .

The Hospital filed a petition requesting the district court to order Imler to pay for the charges for the treatment he received on

the evening of May 3. Imler refused to pay because he believed that the Topeka Police Department should be responsible for the charges as he was in police custody at the time he received treatment.

Linda Sherman, the Hospital's manager of patient financial services, testified that Imler had signed an authorization for treatment form on the night he was treated after the altercation at the bar. The signed treatment form, which was admitted into evidence, indicates that the person signing agrees to pay for the charges for treatment.

The Hospital then presented evidence of the cost of Imler's treatment from the Hospital and from the treatment provided by the emergency room physician. These costs totaled $3,825.20; and testimony was presented that this was the standard normal charge for such services. Imler did not pay these charges, and his health insurance refused to pay for the charges. The Hospital contacted the Shawnee County Jail for payment, but it was denied. It is unclear whether the Topeka Police Department was ever contacted by either the Hospital or Imler to pay for the treatment. Imler initially agreed to pay the charges at the rate of $120 per month, but he later cancelled the payment plan.

The trial judge then questioned Sherman about what an insurance company would have paid, and she indicated that Blue Cross and Blue Shield would have paid "probably 60 percent" of both the Hospital charges and the emergency room physician charges. Sherman started to explain the reason for such reduced-rate contracts, including the fact that part of the agreement is payment in full be made within 30 days, but she was not asked to expand.

The trial court found, *sua sponte*, that the charges for the medical expenses were unreasonable and ordered Imler to pay $2,000. The judge stated:

"Now, the law is pretty clear that even if—you know, if you take the benefit of this, these services, you owe a reasonable cost. I do know that Stormont-Vail would be willing to take less with—if you had insurance. I think you've gotten—I personally think you have kind of a raw deal with your insurance company. I'm sorry about that, but I can't control that. But I am going to order that you're responsible

for $2,000 in the medical expenses, which is a just a very rough estimation of the 60 percent."

The judge then inquired regarding his ability to pay and asked Imler how much he could pay. When he responded "$50 a month," the judge ordered he pay that amount. The attorney for the Hospital objected and noted that the Hospital had not agreed to a reduced amount and argued that the court had no authority to reduce the amount proven and had no authority to order the Hospital to accept reduced payments. The judge was unwavering. The Hospital now appeals the decision. Imler does not cross-appeal the decision holding him responsible for the hospital bill.

## ANALYSIS

*The trial court erred when it* sua sponte *reduced the amount Imler owed the Hospital.*

On its own motion, the trial court found that the $3,825.20 in medical expenses was unreasonable and reduced that amount to $2,000. The Hospital argues that the trial court lacked the authority or the evidentiary support to find the medical costs unreasonable and to reduce them to $2,000. We agree.

Appellate courts have de novo review of cases decided on the basis of documents and stipulated facts. *Rucker v. DeLay*, 295 Kan. 826, 830, 289 P.3d 1166 (2012). In this case, the damages were undisputed. At trial, the Hospital presented evidence of the cost of Imler's treatment. These costs totaled $3,825.20; and testimony was presented that this was the standard and normal charge for such services. Imler did not contest the amount or its reasonableness. Instead, of its own volition, the trial court questioned Sherman about what an insurance company would have paid and she indicated that Blue Cross and Blue Shield would have paid "probably 60 percent" of both the Hospital charges and the emergency room physician charges. However, this reduction was based on a contract and was required to be paid within 30 days, thus recognizing the "burden of collection." The trial court then drew the conclusion, *sua sponte*, that the $3,825.20 in medical expenses was unreasonable and reduced that amount to $2,000, or 52% of the total owed.

Imler neither raised the issue as to whether the medical costs were reasonable, nor did he request that the costs be reduced. Imler's defense for not paying the medical costs incurred on May 3 was that he believed that the Topeka Police Department should be responsible for the charges as he was in police custody at the time he received treatment.

The trial court's decision was clearly not based on substantial competent evidence. Substantial competent evidence is that which is both relevant and substantial and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. In other words, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Venters v. Sellers*, 293 Kan. 87, 93, 261 P.3d 538 (2011). There was absolutely no evidence presented at trial that the medical costs were unreasonable. Moreover, there was no evidence to support the trial court's final amount of $2,000. It appears to be an arbitrary amount based upon "a very rough estimation of the 60 percent" that an insurance company, under contract with the Hospital, would have paid.

Accordingly, we find the trial court erred in reducing the amount owed to $2,000.

*The trial court erred when it ordered the hospital to accept $50 monthly installments from Imler in order to pay off the judgment.*

The trial court ordered Imler to pay the Hospital $50 per month. The Hospital asserts that the trial court lacked the statutory authority to order the Hospital to accept such a payment plan from Imler. We agree.

At no point during the trial did Imler raise any question pertaining to a payment plan. The trial court raised this issue without either party seeking a decision on how the judgment award would be paid by Imler.

Moreover, as the Hospital suggests, its collection rights under K.S.A. 2013 Supp. 61-3504 (garnishment) and K.S.A. 2013 Supp. 61-3604 (hearing in aid of execution) have been hampered by the trial court's order. Under K.S.A. 2013 Supp. 61-3504(a), a judgment creditor may obtain a garnishment order any time after 14

days following the judgment. Under the facts of this case, the Hospital would not be allowed to obtain a garnishment as provided by K.S.A. 2013 Supp. 61-3504 until Imler failed to make a monthly payment. In this case neither party requested a payment plan. The judge simply asked Imler what he could afford to pay on a monthly basis and ordered Imler's response of $50 a month as the monthly payment. There was absolutely no evidence to support such a decision. Accordingly, the trial court erred when it ordered the medical costs of $2,000 to be paid in $50 monthly installments.

Reversed and remanded with directions to enter judgment in favor of the Hospital for $3,825.20.